STATE of North Dakota, Plaintiff and Appellee,

v.

Todd Allen FRANKLIN, Defendant and Appellant.

Cr. No. 940199.

Supreme Court of North Dakota.

Dec. 2, 1994.

Robin L. Huseby, State's Atty., Valley City, for plaintiff and appellee. Submitted on brief.

Stephen M. McLean, Oakes, for defendant and appellant. Submitted on brief.

MESCHKE, Justice.

Todd Allen Franklin appeals from a felony conviction of a felon possessing a firearm, challenging the trial court's refusal to suppress evidence. We affirm the order of suppression and the judgment of conviction.

One night in January 1994, near 1:35 A.M., Sheriff's Deputies Terry Gray and Mark Peterson were patrolling just west of Valley City in a marked police car. When they pulled into the parking lot of the Flickertail Motel, they spotted two occupied vehicles among the lineup parked in front of the motel. As the officers drove toward the first vehicle, its occupants got out and went into a motel room. Officer Gray then "spotted a pickup that had two subjects that appeared to be slumped down in the seat, their heads just barely visible." The officers also saw "a shotgun in the back window of the pickup that was hung in a rack."

Officer Gray drove past the rear of the pickup, and parked the patrol car in the alleyway, "a little bit to the west of the [subject] pickup," without blocking the pickup and without using flashing lights. The officers got out of their car and approached the pickup on opposite sides. Gray immediately recognized Franklin as a convicted felon "from past dealings," and saw, through the window, "another weapon between Mr. Franklin and this other occupant of the vehicle. That was between the two of them, partly on the seat. And the barrel or muzzle toward the floor ... resting down on the floor hump." Gray recognized an SKS Chinese assault rifle.

The officers asked the occupants to step out, confiscated the two weapons and ammunition, and arrested Franklin on an outstanding warrant for another offense from a nearby county. The assault rifle was not loaded, but the 12–gauge semi-automatic shotgun in the back window rack had a shell in the chamber. Franklin was charged with the class C felony of violating NDCC 62.1–02–01(2), as a felon possessing a firearm.

Before trial, Franklin moved to suppress all evidence on the basis that the stop, custodial interrogation, and arrest were illegal because "the deputies on patrol" were "without any articulable facts ... giving rise to a reasonable suspicion that a crime had been or was being committed, in violation of his Fourth Amendment constitutional right against an unlawful seizure and Art. I, Section 8 of the North Dakota Constitution." The trial court denied suppression, reasoning:

> I am not satisfied ... that is a clear stop. The officer pulled his car forward, pulled it to a place about a car length away[,] was maybe partially behind the vehicle.... It wasn't blocked in, didn't pull right up behind him, block him in. Pulled up, got out of the car, recognized the gun, saw [Franklin]. That's plain view...."
>
> . . . .
>
> ... I don't see it as a stop. If they blocked him in or pulled up close to him so he couldn't go or turned on his signal lights like they did in the most recent case....
>
> . . . .
>
> No stop lights, no siren, no lights.
>
> . . . .
>
> If you don't have an actual stop where he can't leave[,] then as far as I am concerned when he goes up to the vehicle when he sees the gun and recognizes [Franklin,] that's plain view.

After a trial without a jury, the court found Franklin guilty and sentenced him to three years imprisonment.

On appeal, Franklin argues that his arrest was an unconstitutional seizure because there was a "stop" with "no valid or legitimate reasons to do a custodial investigation of the pickup." The State responds that "Franklin was already stopped," so this case "involves the role of law enforcement officers as 'community caretakers,'" and that this "caretaking encounter by Officer Gray then [led] him to make observations that a felony was in progress...." We agree with the State that there was neither a stop nor an unconstitutional seizure.

 The law distinguishes between the approach of an already stopped vehicle and the stop of a moving one. *State v. Halfmann*, 518 N.W.2d 729 (N.D.1994). As we explained there, at 731, it is not a seizure for

an officer to walk up to and talk to a person in a public place, including a person in a parked car. "[A] policeman's approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response." *State v. Langseth*, 492 N.W.2d 298, 300 (N.D.1992), citing *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329, 334–35 (N.D.1987) (VandeWalle, Justice, concurring). Still, as we explained in *Langseth*, if an officer learns something during a public encounter with a person that causes a reasonable suspicion or probable cause, the encounter can justify further investigation, seizure, and even arrest. A public encounter does not foreclose the officer from making observations that reasonably lead to further action.

■ Franklin claims that he was stopped in violation of his Fourth Amendment rights. Here, the pickup was already stopped in the public parking lot. The officers stopped their patrol car so that the pickup was not blocked, did not use their flashing lights, and made no show of authority until they saw incriminating circumstances in plain view.

The officers saw the pickup's occupants "slumped down in the seat, their heads were barely visible above the back seat rest," late at night in a motel parking lot. Even though they saw nothing criminal, Officer Gray testified:

> It was something that didn't look like it belonged there. A little bit out of the normal. It is something that you go up and see if anybody is having problems, whatever the case may be.

This public encounter was more of a caretaking activity than a stop or seizure.

Franklin cites *State v. Sarhegyi*, 492 N.W.2d 284 (N.D.1992), to argue that neither his avoidance of a police car nor his presence in the motel parking lot created any reasonable suspicion. Franklin's assertions miss the mark. In *Sarhegyi*, the car stopped had pulled out of the parking lot when the police pulled in, and thus the police stopped a moving vehicle. That required a reasonable suspicion that a crime had been or was being committed. *Sarhegyi*, 492 N.W.2d at 286.

*See also State v. Langseth*, 492 N.W.2d 298 (vehicle was parked and stopped by officer when driving away); *City of Minot v. Nelson*, 462 N.W.2d 460 (N.D.1990) (similar). *Compare State v. Halfmann*, 518 N.W.2d 729 (officer approached stopped vehicle, no Fourth Amendment seizure); *Buck v. North Dakota State Highway Comm'r*, 425 N.W.2d 370 (N.D.1988) (similar); *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329 (N.D.1987) (similar). Here, the driver of Franklin's vehicle did not attempt to move or to leave the parking lot. Until the officers saw incriminating circumstances, the officers made no effort to restrain the pickup from leaving. There was no stop of a moving vehicle.

In this case, the officers approached an already stopped pickup, and they identified a person and evidence in plain view. Their observations gave them reasonable and articulable suspicion to proceed further. The ensuing seizure and arrest comport with the Fourth Amendment. We affirm the order denying suppression and the judgment of conviction.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.