2009 ND 122

**Dean Allan ABERNATHEY, Petitioner and Appellant**

v.

**DEPARTMENT OF TRANSPOR-TATION, Respondent and Appellee.**

No. 20080336.

Supreme Court of North Dakota.

July 9, 2009.

Troy R. Morley, Reichert Armstrong Law Office, Grand Forks, ND, for petitioner and appellant.

Douglas Bruce Anderson, Assistant Attorney General, Bismarck, ND, for respondent and appellee.

KAPSNER, Justice.

[¶ 1] Dean Allan Abernathey appeals from a judgment affirming the Department of Transportation's suspension of his driver's license for being in actual physical control of a vehicle while under the influence of alcohol. Because we conclude the Department correctly determined a law enforcement officer did not violate Abernathey's Fourth Amendment rights, we affirm the judgment.

I

[¶ 2] At approximately 3:00 a.m. on June 10, 2008, Bottineau County Deputy Sheriff Matthew Keesler received a call from dispatch at his home in Westhope informing him that people were causing a disturbance at a Lansford bar which is connected to a motel and which was supposed to have closed at 1:00 a.m. According to Keesler, the dispatcher told him people were "hoot and hollering in the bar" and "disturbing motel patrons." Keesler got dressed and drove for 35 to 40 minutes to Lansford. The hearing officer described what transpired in his findings of fact:

> Upon pulling into the parking lot, at about 4:00 a.m., Keesler noticed one pickup. Keesler had his window down to listen and heard the pickup start up and shut off again. The interior light was on in the pickup and Keesler could see two people in the pickup. Keesler stopped his patrol vehicle, without activating his red lights, parking it off set from the pickup so as not to block its path. Keesler approached and spoke to

the driver. The driver's eyes appeared bloodshot. Keesler saw that the pickup's door was locked, so he asked the man in the driver's seat, Dean Allan Abernathey, if he would please unlock the vehicle. Abernathey slurred his speech as he asked Keesler what was going on? Keesler again asked Abernathey to unlock his door and to exit the vehicle. Abernathey did so, but he had poor balance as he stepped out. Keesler had Abernathey dispose of his cigarette. There was a strong odor of an alcoholic beverage. Keesler explained why he was there. Abernathey became belligerent about being bothered, swearing and saying they were headed home.

[¶ 3] Keesler had Abernathey perform field sobriety tests and handcuffed and placed the passenger, Abernathey's brother, into the back seat of the patrol car after he began causing a disturbance. Abernathey failed some of the field sobriety tests and an S–D2 onsite screening breath test and Keesler eventually placed him under arrest for actual physical control while under the influence of alcohol.

[¶ 4] Following an administrative hearing, the hearing officer suspended Abernathey's driver's license for two years. The hearing officer rejected Abernathey's claim that his Fourth Amendment rights were violated. The hearing officer concluded no constitutional violation occurred because Keesler did not "stop" or "seize" Abernathey until the second time Keesler asked him to exit the vehicle, and by then, Keesler had reasonable suspicion that Abernathey was in actual physical control while under the influence of alcohol. The district court affirmed the Department's decision.

## II

[¶ 5] Abernathey contends his Fourth Amendment rights were violated because Keesler lacked reasonable suspicion or probable cause to approach his pickup.

[¶ 6] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs our review of an administrative suspension of a driver's license. *Brewer v. Ziegler*, 2007 ND 207, ¶ 4, 743 N.W.2d 391. We must affirm unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

[¶ 7] In *Hoover v. Director, North Dakota Dep't of Transp.*, 2008 ND 87, ¶ 7, 748 N.W.2d 730, we explained:

This Court "review[s] an appeal from the determination of an administrative agency based only on the record filed with the court." N.D.C.C. § 28–32–46. We do " 'not make independent findings of fact or substitute our judgment for that of the agency' when reviewing an

administrative agency's factual findings." *Sayler v. North Dakota Dep't of Transp.*, 2007 ND 165, ¶ 7, 740 N.W.2d 94 (quoting *Kiecker v. North Dakota Dep't of Transp.*, 2005 ND 23, ¶ 8, 691 N.W.2d 266). "We determine only whether a reasoning mind reasonably could have determined the factual conclusions reached were proved by the weight of the evidence from the entire record." *Sayler*, at ¶ 7. " 'If the hearing officer's findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law, we will not disturb the decision.' " *Brewer*, 2007 ND 207, ¶ 4, 743 N.W.2d 391 (quoting *Borowicz v. North Dakota Dep't of Transp.*, 529 N.W.2d 186, 187 (N.D. 1995)). "[W]e ... review questions of law de novo." *Sayler*, at ¶ 7.

▮ [¶ 8] Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United States Constitution and by Section 8, Article I of the North Dakota Constitution. *State v. Albaugh*, 2007 ND 86, ¶ 10, 732 N.W.2d 712. However, not all encounters between law enforcement officers and citizens constitute "seizures" implicating the Fourth Amendment. *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478. In cases involving motor vehicles, the "law distinguishes between the approach of an already stopped vehicle and the stop of a moving one." *State v. Franklin*, 524 N.W.2d 603, 604 (N.D.1994). "It is not a Fourth Amendment seizure for a police officer to approach and talk with a person in a public place, including a stopped vehicle." *State v. Leher*, 2002 ND 171, ¶ 7, 653 N.W.2d 56. A law enforcement officer's "approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response." *State v.*

*Langseth*, 492 N.W.2d 298, 300 (N.D.1992). A casual encounter between an officer and a citizen can become a seizure "if a reasonable person would view the officer's actions—if done by another private citizen— as threatening or offensive." *State v. Boyd*, 2002 ND 203, ¶ 7, 654 N.W.2d 392. A seizure occurs for Fourth Amendment purposes only " 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " *Sayler v. North Dakota Dep't of Transp.*, 2007 ND 165, ¶ 18, 740 N.W.2d 94 (quoting *Jerome*, at ¶ 5).

▮ [¶ 9] Keesler did not need reasonable suspicion or probable cause to approach Abernathey's pickup. The issue is whether Keesler escalated this "casual encounter" into a seizure by ordering Abernathey "to do something, by demanding a response, or by threatening [him] with a show of authority or command." *Jerome*, 2002 ND 34, ¶ 9, 639 N.W.2d 478.

[¶ 10] This Court has said, "If ... an officer directs a citizen to exit a parked vehicle, or otherwise orders a citizen to do something, then the officer has arguably made a stop which, consistent with the Fourth Amendment rights of the citizen, requires the officer to have a reasonable and articulable suspicion that person has been or is violating the law." *Leher*, 2002 ND 171, ¶¶ 7, 10, 653 N.W.2d 56 (Fourth Amendment "stop" occurred when undisputed testimony showed officer "order[ed] that Leher exit the vehicle"); *see also City of Grand Forks v. Zejdlik*, 551 N.W.2d 772, 775 (N.D.1996) ("Arguably, a stop occurred when the officer asked Zejdlik to get out of his vehicle and be seated in the patrol car."); *Borowicz v. North Dakota Dep't of Transp.*, 529 N.W.2d 186, 188 (N.D.1995) ("[A] stop arguably occurred when Officer Erickson requested Borowicz to open the door of the pickup and asked Borowicz to produce his driver's license.

The requests could be interpreted as an order 'to do something' depending on how it was made.").

■ [¶ 11] A law enforcement officer's request that a person exit a parked vehicle does not invariably result in a "seizure" of the occupant for Fourth Amendment purposes. Chief Justice VandeWalle, in his concurring opinion in *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329, 335 (N.D.1987) (VandeWalle, J., concurring in result), quoted from 3 W. LaFave, *Search and Seizure* § 9.2(h) (1987), for a "useful" "analytical approach" in cases concerning police contact with persons seated in parked vehicles:

> "... the mere approach and questioning of such persons does not constitute a seizure. The result is not otherwise when the officer utilizes some generally accepted means of gaining the attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation. The officer may tap on the window and perhaps even open the door if the occupant is asleep. *A request that the suspect open the door or roll down the window would seem equally permissible, but the same would not be true of an order that he do so. Likewise, the encounter becomes a seizure if the officer orders the suspect out of the car.* So too, other police action which one would not expect if the encounter was between two private citizens—boxing the car in, approaching it on all sides by many officers, or use of flashing lights as a show of authority—will likely convert the event into a Fourth Amendment seizure." 3 LaFave, *Search and Seizure,* at 415–417. [Footnotes omitted.]

(Emphasis added.) *See also* 4 W. LaFave, *Search and Seizure* § 9.4(a), at 433–34 (2004).

[¶ 12] In line with this view, numerous courts have held that an occupant of a vehicle has not been "seized" when a law enforcement officer requests, rather than orders or commands, that the occupant open a window or exit a vehicle. *See, e.g., Latta v. Keryte,* 118 F.3d 693, 699–700 (10th Cir.1997) (officer "asked him to get out of the car"); *Medley v. State,* 630 So.2d 163, 165 (Ala.Ct.Crim.App.1993) ("officer merely tapped on the window and requested the appellant to roll down the window"); *Mauge v. State,* 279 Ga.App. 36, 630 S.E.2d 174, 177 (2006) ("investigator asked Mauge to step out of the car"); *Akins v. State,* 266 Ga.App. 214, 596 S.E.2d 719, 722 (2004) ("police officers may approach a citizen, ask for identification, ask him to roll down a window or step out of a car, and freely question him without any articulable suspicion, as long as the officers do not detain the citizen or create the impression that the citizen may not leave"); *State v. Zubizareta,* 122 Idaho 823, 839 P.2d 1237, 1241 (Ct.App.1992) (police "request to roll down the window"); *People v. Murray,* 137 Ill.2d 382, 148 Ill. Dec. 7, 560 N.E.2d 309, 314 (1990) (officers "asked him to step out of the car and show his license"); *abrogated on other grounds, People v. Luedemann,* 222 Ill.2d 530, 306 Ill.Dec. 94, 857 N.E.2d 187 (2006); *People v. Clark,* 185 Ill.App.3d 231, 133 Ill.Dec. 362, 541 N.E.2d 199, 203 (1989) ("officer merely tapped on the window, identified himself, and said to open it"); *State v. Nault,* 180 Vt. 567, 908 A.2d 408, 411–12 (2006) (defendant failed to establish that officer's request to "open his car door" was a "command").

■ [¶ 13] Here, the hearing officer found that, before approaching and speaking to Abernathey, Keesler stopped his patrol car without activating its red lights and parked it "off set from the pickup so as not to block its path." The hearing officer further found that, because the pickup door was locked, Keesler "asked" Abernathey if he would "please unlock the

vehicle." These findings are supported by Keesler's testimony:

> DEPUTY KEESLER: Then I pulled into the parking lot and didn't activate my red lights. I just parked off center of the vehicle, so it—it was free to get out. But I wanted to make contact with the people to ascertain that they were okay and find out what the call was about.
>
> MR. HALBACH: So what did you do after stopping?
>
> DEPUTY KEESLER: Well, after stopping I exited my vehicle, and the overhead light in the pickup truck was on also, the interior light. So I went around and I observed there were two people in the vehicle.
>
> MR. HALBACH: And did you recognize either one?
>
> DEPUTY KEESLER: No.
>
> MR. HALBACH: And what did you do?
>
> DEPUTY KEESLER: Well, I asked if I could please—I'm addressing the driver. I said, you now, can I—can I please talk to you. I noticed that he had a fresh lit cigarette and the door was locked. I asked him to please unlock the door and come on out, so I could talk to him.
>
> MR. HALBACH: And when you're talking to him, is the window up or down?
>
> DEPUTY KEESLER: The window was up, but I had a clear vision of the driver.
>
> MR. HALBACH: And after you asked him to unlock the door and exit, what did he do?
>
> DEPUTY KEESLER: He complied.
>
> MR. HALBACH: Up until that point, did anything appear unusual in the vehicle?
>
> DEPUTY KEESLER: Well, I could see the driver had bloodshot eyes. He fumbled for the door. He appeared confused. When I asked him, could you please unlock the door and talk to me, his speech was slurred.
>
> MR. HALBACH: What did he say to you that caused you to think it was slurred?
>
> DEPUTY KEESLER: Well, when I asked him could you please open up the door and talk to me, he says to me, in effect of, you know, what's—what's going on?

[¶ 14] The hearing officer made no finding, and the record does not reflect, whether Keesler's request to "please unlock the door and come on out, so I could talk to him" was made in a normal conversational tone. The word "please" can be used "to express politeness or emphasis in a request." *Merriam Webster's Collegiate Dictionary* 952 (11th ed. 2003).

[¶ 15] The hearing officer's determination that "Keesler did not stop or seize Abernathey when he asked if Abernathey would please unlock his door and exit" is supported by the record. Keesler did not activate the patrol car's red lights when approaching the pickup and did not park in a manner that blocked Abernathey's pickup from leaving the scene. Based on these unobtrusive actions, Keesler's asking Abernathey to "please unlock the door and come on out" to talk can be viewed as a request rather than an order or command, a view necessarily taken by the hearing officer in concluding that Keesler did not stop or seize Abernathey. The hearing officer's conclusion was based on his observation of Keesler's testimony. We conclude a Fourth Amendment seizure did not occur when Keesler requested that Abernathey unlock the door and exit the pickup.

[¶ 16] In *Franklin*, 524 N.W.2d at 605, this Court explained that "if an officer learns something during a public encounter with a person that causes a reasonable suspicion or probable cause, the encounter can justify further investigation, seizure, and even arrest. A public

encounter does not foreclose the officer from making observations that reasonably lead to further action." *See also State v. Gahner*, 554 N.W.2d 818, 820 (N.D.1996); *Zejdlik*, 551 N.W.2d at 775; *Borowicz*, 529 N.W.2d at 188. A law enforcement officer has a reasonable and articulable suspicion that a law has been or is being violated if a reasonable person in the officer's position would be justified by some objective manifestation to suspect potential criminal activity. *Gahner; Zejdlik*. Assuming a seizure occurred the second time Keesler asked Abernathey to unlock the door and exit the pickup, Keesler had by then already observed enough to give him a reasonable and articulable suspicion of actual physical control. Keesler was dispatched to investigate an after-hour disturbance at a bar and observed Abernathey's pickup, the only vehicle in the parking lot. When Keesler spoke to Abernathey, Keesler observed Abernathey's bloodshot eyes, his "confused" state, and his "slurred" speech. Under the totality of the circumstances, we conclude Keesler had a reasonable and articulable suspicion that Abernathey was in actual physical control of a vehicle while under the influence of alcohol before Keesler made the second request to open the door and exit the vehicle.

[¶ 17] We conclude Abernathey's Fourth Amendment rights were not violated in this case.

### III

[¶ 18] The judgment is affirmed.

[¶ 19] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.