2011 ND 235

**John Edward ENGSTROM, Petitioner and Appellant,**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellee.**

**No. 20110166.**

Supreme Court of North Dakota.

Dec. 13, 2011.

Chad R. McCabe (argued), Bismarck, ND, for petitioner and appellant.

Douglas B. Anderson (argued), Assistant Attorney General, Office of Attorney General, Bismarck, ND, for respondent and appellee.

KAPSNER, Justice.

[¶ 1] John Engstrom appeals from a district court judgment affirming the administrative revocation of his driver's license for four years after his arrest for being in actual physical control of a vehicle while under the influence of intoxicating liquor. Because we conclude the police officer in this case had reasonable suspicion to seize and probable cause to arrest Engstrom, we affirm.

I

[¶ 2] On September 13, 2010, Officer Peter Czapiewski of the Mandan Police Department responded to a call from dispatch, arriving at the location of a reported incident at approximately 5:00 a.m. and observing a parked vehicle. After approaching the vehicle, Czapiewski identified John Engstrom as its driver. According to Czapiewski, Engstrom had bloodshot eyes and "mush mouth to slow" speech. Czapiewski noted "I did not smell an odor of alcoholic beverage while speaking with him." Czapiewski ordered Engstrom to exit his vehicle and "noticed the door dinged . . . indicating the keys were in the ignition." Engstrom verified the keys were in the ignition. Czapiewski asked Engstrom how much alcohol he had consumed that night. Engstrom "said he had some[,]" though the parties dispute whether this admission was made before or after Engstrom exited his vehicle. Czapiewski requested Engstrom to submit to a horizontal gaze nystagmus ("HGN") test, and Engstrom agreed. Czapiewski

determined Engstrom failed the test. Czapiewski next asked Engstrom to submit to an S–D5 intoxilyzer test. After some discussion, Engstrom agreed to take the test. Czapiewski arrested Engstrom for being in actual physical control of a vehicle while under the influence of intoxicating liquor.

[¶ 3] Czapiewski then requested Engstrom to submit to a blood test for alcohol concentration. Engstrom asked to speak with his attorney, but was unable to reach him by phone. Czapiewski again asked Engstrom to submit to blood testing, and Engstrom verbally refused.

[¶ 4] Due to Engstrom's refusal, the North Dakota Department of Transportation ("DOT") notified him that it intended to revoke his driving privileges for four years. Engstrom requested an administrative hearing. At a hearing held October 8, 2010, Engstrom argued Czapiewski lacked reasonable and articulable suspicion to order him out of his vehicle, and Czapiewski did not have probable cause to arrest him. Engstrom also objected to the introduction of the S–D5 results, arguing implied consent for onsite breath screening is limited under N.D.C.C. § 39–20–14 to situations involving moving traffic violations or accidents. Because Engstrom had been in a parked vehicle at the time of his arrest, the hearing officer sustained the objection to the S–D5 results. However, the hearing officer found the police officer had reasonable grounds to believe Engstrom was in actual physical control of a vehicle in violation of state law and revoked Engstrom's driving privileges for four years. Engstrom filed a petition for reconsideration, which the hearing officer denied. Engstrom then appealed the administrative decision to the district court, and the court upheld the revocation of his driver's license.

## II

[¶ 5] Engstrom argues the DOT should not have revoked his driver's license. Engstrom claims his constitutional rights were violated because Czapiewski did not have reasonable and articulable suspicion to order Engstrom from his car, and Czapiewski did not have probable cause to place Engstrom under arrest.

[¶ 6] Our review of an administrative agency's suspension of a driver's license is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Richter v. N.D. Dep't of Transp.*, 2010 ND 150, ¶ 6, 786 N.W.2d 716. An agency decision is affirmed unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46. On appeal, we review the agency's findings and decisions. N.D.C.C. § 28–32–49; *Hawes v. N.D.*

*Dep't of Transp.*, 2007 ND 177, ¶ 13, 741 N.W.2d 202. "If the hearing officer's findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law, we will not disturb the decision." *Richter*, at ¶ 7 (quoting *Brewer v. Ziegler*, 2007 ND 207, ¶ 4, 743 N.W.2d 391). "In deciding whether an agency's findings of fact are supported by a preponderance of the evidence, our review is confined to the record before the agency and to determining 'whether a reasoning mind reasonably could have determined the factual conclusions were proven by the weight of the evidence.'" *Hawes*, at ¶ 14 (quoting *Kraft v. N.D. State Bd. of Nursing*, 2001 ND 131, ¶ 10, 631 N.W.2d 572). The ultimate conclusions of whether the facts meet the legal standards of reasonable and articulable suspicion and probable cause are questions of law, which are fully reviewable on appeal. *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 7, 663 N.W.2d 161; *Salter v. N.D. Dep't of Transp.*, 505 N.W.2d 111, 112 (N.D.1993).

### A

[¶ 7] Engstrom argues he was seized in violation of his constitutional rights when he was ordered to exit his vehicle. Engstrom claims Czapiewski only "had an anonymous tip and was unable to corroborate the tip by observing some behavior on the part of the driver, either illegal or indicative of impairment." Engstrom asserts that observing bloodshot eyes and "mush mouth and slow speech" were insufficient to constitute reasonable and articulable suspicion to order Engstrom from his vehicle. Engstrom states, "Merely having bloodshot eyes at 5:00 a.m. is entirely consistent with innocent behavior and ... without knowing Engstrom's speech prior to this incident, it would be impossible to know whether he normally had mush

mouth and slow speech." Finally, Engstrom claims the hearing officer erred in finding "Engstrom had an odor of an alcoholic beverage" while inside his vehicle, and "[b]oth the hearing officer and District Court erroneously thought that Engstrom admitted to drinking prior to being ordered to step from the vehicle...."

[¶ 8] The DOT responds, "Under the totality of the circumstances, and even without regard to the timing of Engstrom's admission of alcohol consumption, a reasonable person in Officer Czapiewski's position would have been justified to believe Engstrom was engaged in unlawful activity." The DOT lists Czapiewski's seven years of experience, the report from dispatch, the time of day, and Engstrom's bloodshot eyes and slow speech as factors amounting to reasonable and articulable suspicion to order Engstrom to exit his vehicle.

[¶ 9] The Fourth Amendment of the United States Constitution, applicable to the states under the Fourteenth Amendment, and the North Dakota Constitution prohibit unreasonable searches and seizures. *Richter*, 2010 ND 150, ¶ 9, 786 N.W.2d 716. Not all encounters between police officers and citizens amount to a seizure implicating the Fourth Amendment. *Abernathey v. Dep't of Transp.*, 2009 ND 122, ¶ 8, 768 N.W.2d 485. A distinction exists between approaching a stopped vehicle and stopping a moving one, and it is not a seizure for an officer to approach and talk to a person in a stopped vehicle. *Id.* Engstrom focuses on the anonymity of the tip to dispatch, claiming Czapiewski did not corroborate the tip by observing suspicious conduct, but his argument is immaterial in this case. Corroboration of a tip may be required to stop a vehicle. *Anderson v. Dir., N.D. Dep't of Transp.*, 2005 ND 97, ¶¶ 9–10, 696 N.W.2d 918. But Engstrom's vehi-

cle was parked when Czapiewski approached; a seizure did not occur at that point, and corroboration of the tip was unnecessary.

[¶ 10] Not until an officer uses physical force or a show of authority, thereby restraining the liberty of a citizen, does a seizure occur. *Abernathey*, 2009 ND 122, ¶ 8, 768 N.W.2d 485. Here, Czapiewski testified that when he asked Engstrom to exit the vehicle, it was an order rather than a request. When an officer orders a citizen to exit a parked vehicle, the officer must have reasonable and articulable suspicion that the person has violated the law. *Id.* at ¶ 10. We have stated:

> We do not require an officer to isolate single factors which signal a potential violation of the law; but instead, "officers are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity." When assessing reasonableness, we consider inferences and deductions an investigating officer would make which may elude a layperson.

*State v. Olson*, 2007 ND 40, ¶ 11, 729 N.W.2d 132 (quoting *City of Fargo v. Ovind*, 1998 ND 69, ¶ 9, 575 N.W.2d 901). Observations of bloodshot eyes, slurred speech, and the odor of alcohol are sufficient for finding reasonable and articulable suspicion. *See, e.g., Abernathey*, at ¶ 16 (bloodshot eyes, confused state, and slurred speech); *Olson*, at ¶ 4 (odor of alcohol, bloodshot and watery eyes, and slightly slurred speech).

[¶ 11] In this case, the DOT concedes the hearing officer's finding that Czapiewski observed an odor of an alcoholic beverage while Engstrom was still in his vehicle "is not supported by the evidence."

The testimony was ambiguous as to whether Engstrom admitted to consuming alcohol before or after he was ordered to exit his vehicle. When testimony is ambiguous, we rely on the findings of the hearing officer. *See Hawes*, 2007 ND 177, ¶ 14, 741 N.W.2d 202. We conclude a reasoning mind could have determined, by the weight of the evidence, that this admission was made while Engstrom was still in his car. There was reasonable and articulable suspicion to seize Engstrom based on the hearing officer's findings of bloodshot eyes, slow speech, mush mouth, and admission of drinking.

B

[¶ 12] Engstrom also contends he was arrested without probable cause. Engstrom claims that at the time of his arrest, Czapiewski had only observed bloodshot eyes and mush mouth and slow speech, though Engstrom had also admitted to drinking that night. Engstrom asserts he "gave his driver's license and date of birth accurately and appropriately, ... had no trouble getting out of the vehicle, ... and had no difficulty walking."

[¶ 13] The DOT counters that Czapiewski's "observations of Engstrom seated in his parked vehicle ... at the unusual hour of approximately 5:00 a.m., after receiving a report of suspicious activity, Engstrom's 'bloodshot eyes and the mush mouth speech,' Engstrom's admission to having consumed alcohol, and his failing performance on the HGN" amounted to probable cause for Engstrom's arrest.

[¶ 14] "A law enforcement officer, without a warrant, may arrest a person: ... [o]n a charge, made upon reasonable cause, of driving or being in actual physical control of a vehicle while under the influence of alcoholic beverages." N.D.C.C. § 29–06–15(f). "Reasonable

cause" is the same as "probable cause." *State v. Hensel*, 417 N.W.2d 849, 852 (N.D. 1988). When evaluating whether an officer had probable cause to arrest, this Court considers the totality of the circumstances. *Sonsthagen*, 2003 ND 90, ¶ 17, 663 N.W.2d 161. "Probable cause to arrest exists when the facts and circumstances within police officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing an offense has been or is being committed." *Id.* (quoting *Henderson v. Dir., N.D. Dep't of Transp.*, 2002 ND 44, ¶ 8, 640 N.W.2d 714).

[¶ 15] The report to dispatch, the time of day, and Czapiewski's observations are all relevant to the probable cause determination. Engstrom admitted to having consumed alcohol; Czapiewski determined Engstrom failed field sobriety tests. An individual's own words and failing performance of field sobriety tests are relevant factors in determining probable cause. *City of Devils Lake v. Grove*, 2008 ND 155, ¶ 11, 755 N.W.2d 485; *Kahl v. Dir., N.D. Dep't of Transp.*, 1997 ND 147, ¶ 17, 567 N.W.2d 197.

[¶ 16] Engstrom challenges the hearing officer's consideration of the HGN test results, claiming Czapiewski did not properly perform the test. During the administrative hearing, Czapiewski testified that he had performed the HGN test in accordance with his training, but he could not recall specifics of how to perform the test. The DOT counters, "Engstrom's challenge to the HGN test goes to the weight, rather than the admissibility of the test[,]" and claims "the hearing officer took into consideration Officer Czapiewski's training in the test, his seven years' experience conducting the HGN test, and his testimony that he conducted Engstrom's HGN in accordance with his training." In *City of Fargo v. McLaughlin*, this Court discussed "factors allegedly showing the unreliability of the [HGN] test[,]" including the difficulty of properly administering the test, and concluded "all of these factors can be shown through cross-examination or expert testimony, and therefore they go to the *weight* of the evidence, rather than its admissibility." 512 N.W.2d 700, 707 (N.D.1994). The hearing officer found, "Officer Czapiewski recalled giving the horizontal gaze nystagmus test in accordance with his training, but he did not recall such details as the exact number of seconds for each step performed." This finding indicates the hearing officer weighed the credibility of the officer's testimony regarding the HGN, and her consideration of such evidence was not improper. Under the totality of the circumstances, the hearing officer's conclusion that Czapiewski had reasonable grounds to believe that Engstrom was in actual physical control of a vehicle while intoxicated is supported by the record. *See Moran v. N.D. Dep't of Transp.*, 543 N.W.2d 767, 770 (N.D.1996) (holding relevant factors may not have been sufficient on their own for probable cause, but determining the cumulative effect of the factors was sufficient).

[¶ 17] Engstrom also argues the North Dakota Constitution should provide greater protection than the federal Constitution against unreasonable searches and seizures. In *Richter v. North Dakota Department of Transportation*, this Court declined to address an argument for greater protection under the North Dakota Constitution, in part because the proponent had not adequately supported his argument in his appellate brief. 2010 ND 150, ¶ 21, 786 N.W.2d 716. Engstrom's argument is largely unsupported and will not be considered here.

## III

[¶ 18] The district court judgment affirming the administrative revocation of Engstrom's driver's license is affirmed.

[¶ 19] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ., concur.

MARY MUEHLEN MARING, J., concurs in the result.