2014 ND 198

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Robert SCHNEIDER, Defendant and Appellant.**

**No. 20140153.**

Supreme Court of North Dakota.

Oct. 28, 2014.

Alexander James Stock, Assistant State's Attorney, Courthouse, Bismarck, ND, for plaintiff and appellee.

Samuel A. Gereszek, East Grand Forks, MN, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Robert Allen Schneider appeals the district court's order denying Schneider's motion to suppress evidence following a conditional guilty plea to possession of marijuana by a driver and possession of drug paraphernalia. Schneider argues the deputy's pre-arrest conduct went beyond a welfare check and was a seizure under the Fourth Amendment, requiring a reasonable and articulable suspicion of criminal activity, which the deputy lacked. We affirm.

I

[¶ 2] On November 6, 2012, at approximately 11 p.m., Schneider was parked along a gravel road near the Double Ditch historical site. Burleigh County Deputy

Sheriff Vyska pulled onto the gravel road, turned on his flashing lights and parked about a car's length behind Schneider's vehicle. The gravel road continued in front of Schneider's vehicle, and another gravel road was immediately to the left of Schneider's vehicle. The district court determined Schneider could have driven forward or could have traveled down the gravel road to the left. It is not clear which lights were activated on the deputy's vehicle. The deputy exited his vehicle and approached Schneider's vehicle with a flashlight. A video camera recorded the event, but audio did not begin until 6 minutes and 50 seconds elapsed, which was after Schneider exited his vehicle.

[¶ 3] According to the deputy's report, the deputy asked Schneider if anything illegal was in the vehicle. Schneider stated there was not. The deputy asked to search the vehicle and Schneider consented. The deputy asked Schneider to step out of the vehicle, which Schneider did. The deputy asked if he could pat search Schneider and Schneider consented. The search revealed a bottle containing marijuana. Schneider then told the deputy that a small metal container in the center console of the car contained marijuana. A search of the vehicle revealed a small metal container containing marijuana and a wooden smoking device containing marijuana. Schneider was charged with possession of marijuana and possession of drug paraphernalia. Schneider filed a motion to suppress.

[¶ 4] Neither party requested a hearing. Schneider offered the DVD from the police dash cam and the deputy's report into evidence; however, each party argues facts not contained in the DVD or deputy report. No evidence was presented that Schneider did not feel free to leave. The State concedes the deputy had no reasonable suspicion to stop Schneider. The dis-

trict court determined the deputy conducted a welfare check, stating, "[T]he deputy approached an already parked car, did not order the defendant to do anything, and did not demand a response from the defendant. The defendant consented to a search of his person and his car." The district court found no seizure occurred and denied the motion to suppress. Schneider conditionally pled guilty under Rule 11(a)(2) of the North Dakota Rules of Criminal Procedure to possession of marijuana by a driver and possession of drug paraphernalia. Schneider appeals.

II

[¶ 5] When reviewing a district court's decision on a motion to suppress:

"We will defer to a trial court's findings of fact in the disposition of a motion to suppress. Conflicts in testimony will be resolved in favor of affirmance, as we recognize the trial court is in a superior position to assess credibility of witnesses and weigh the evidence. Generally, a trial court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the trial court's findings, and if its decision is not contrary to the manifest weight of the evidence."

*State v. Genre,* 2006 ND 77, ¶ 12, 712 N.W.2d 624 (citation omitted). "Questions of law are reviewed under the de novo standard of review." *Id.*

[¶ 6] Schneider has the burden to prove the seizure was illegal. *City of Fargo v. Sivertson,* 1997 ND 204, ¶ 6, 571 N.W.2d 137 ("A person alleging his rights have been violated under the Fourth Amendment has an initial burden of establishing a prima facie case of illegal seizure."). After the person alleging a Fourth Amendment violation has made a prima facie case, "the burden of persuasion

is shifted to the State to justify its actions." *Id.*

"We affirm the decision of a trial court on a motion to suppress, after resolving conflicting evidence in favor of affirming the decision, unless we conclude there is insufficient evidence to support the decision or the decision goes against the manifest weight of the evidence. *State v. Loh*, 2000 ND 188, ¶ 4, 618 N.W.2d 477. Recognizing the importance of the trial court's opportunity to observe witnesses and assess their credibility, we accord great deference to the trial court's findings of fact in suppression matters. *Id.*"

*City of Jamestown v. Jerome*, 2002 ND 34, ¶ 6, 639 N.W.2d 478.

### III

[¶ 7] Schneider argues the district court erred in denying his motion to suppress because the deputy's show of authority constituted a seizure under the Fourth Amendment. "Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United States Constitution and by Section 8, Article I of the North Dakota Constitution." *Abernathey v. Dep't of Transp.*, 2009 ND 122, ¶ 8, 768 N.W.2d 485 (citing *State v. Albaugh*, 2007 ND 86, ¶ 10, 732 N.W.2d 712). "[N]ot all encounters between law enforcement officers and citizens constitute 'seizures' implicating the Fourth Amendment." *Abernathey*, at ¶ 8. "For example, a community caretaking encounter does not constitute a seizure within the meaning of the Fourth Amendment." *Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478. Moreover, the "law distinguishes between the approach of an already stopped vehicle and the stop of a moving one." *State v. Franklin*, 524 N.W.2d 603, 604 (N.D.1994). "It is not a Fourth Amendment seizure for a police officer to approach and talk with a person in a public place, including a stopped vehicle." *State v. Leher*, 2002 ND 171, ¶ 7, 653 N.W.2d 56.

### A

[¶ 8] "Law enforcement officers often serve as community caretakers." *State v. Boyd*, 2002 ND 203, ¶ 7, 654 N.W.2d 392; *State v. DeCoteau*, 1999 ND 77, ¶ 19, 592 N.W.2d 579. "Community caretaking allows law enforcement-citizen contact, including stops, without an officer's reasonable suspicion of criminal conduct." *Boyd*, at ¶ 7. In *Cady v. Dombrowski*, the United States Supreme Court described this community caretaking function as "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *see also Rist v. N.D. Dep't of Transp.*, 2003 ND 113, ¶ 9, 665 N.W.2d 45. In *Jerome*, this Court explained, "In circumstances where it is obvious that a citizen is neither in need of nor desires assistance there is no community caretaking role to fill." 2002 ND 34, ¶ 8, 639 N.W.2d 478. We concluded the officer's request to talk with the defendant did not fall within the "community caretaker" role "because his objective was to investigate the possibility of a law violation, not to help a person in possible need of assistance." *Id.*

[¶ 9] Here, the district court determined the deputy was performing a community caretaker function. We defer to the district court's findings of fact, which is supported by the deputy's report and affidavit. *Jerome*, 2002 ND 34, ¶ 6, 639 N.W.2d 478. The deputy was performing a community caretaker function. The officer may develop a reasonable and articulable suspicion of unlawful conduct from the officer's initial community caretaking encounter. *Boyd*, 2002 ND 203,

¶ 7, 654 N.W.2d 392. "[I]f an officer learns something during a public encounter with a person that causes a reasonable suspicion or probable cause, the encounter can justify further investigation, seizure, and even arrest. A public encounter does not foreclose the officer from making observations that reasonably lead to further action." *Franklin*, 524 N.W.2d at 605.

### B

[¶ 10] Schneider argues the deputy did not communicate in a "conversational manner." He argues the deputy immediately asked if anything illegal was in the vehicle. "A law enforcement officer's 'approach [of] a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response.'" *Abernathey*, 2009 ND 122, ¶ 8, 768 N.W.2d 485 (quoting *State v. Langseth*, 492 N.W.2d 298, 300 (N.D.1992)). However, "[a] casual encounter between an officer and a citizen can become a seizure 'if a reasonable person would view the officer's actions—if done by another private citizen—as threatening or offensive.'" *Abernathey*, at ¶ 8 (quoting *Boyd*, 2002 ND 203, ¶ 7, 654 N.W.2d 392).

[¶ 11] "[M]ere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). "Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search ... provided they do not induce cooperation by coercive means. If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." *United States v. Drayton*, 536 U.S. 194, 201, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002) (citations omitted). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "A consensual encounter becomes a seizure implicating the Fourth Amendment when, considering the totality of the circumstances, the questioning is 'so intimidating, threatening, or coercive that a reasonable person would not have believed himself free to leave.'". *United States v. Flores–Sandoval*, 474 F.3d 1142, 1145 (8th Cir.2007) (quoting *United States v. Hathcock*, 103 F.3d 715, 718 (8th Cir.1997)).

[¶ 12] The district court found the deputy approached an already parked vehicle, did not order the defendant to do anything and did not demand a response from Schneider. Schneider consented to a search of his person and his car. Schneider did not present evidence that he did not feel free to leave or that he felt coerced into consenting to the searches. Schneider failed to present evidence showing that his cooperation was produced by coercive means, that he felt the deputy's actions were threatening or offensive, that he felt as if he could not terminate the conversation or that a reasonable person would have felt threatened, coerced or unable to leave. The district court's findings are supported by the evidence.

### C

[¶ 13] Schneider argues the deputy's approach with his overhead lights flashing was a "show of authority," which effectuated a seizure under the Fourth Amendment requiring reasonable and articulable suspicion of criminal activity. The deputy activated his flashing lights and parked about a car's length behind

Schneider's stopped vehicle. No evidence establishes which lights were activated on the deputy's car.

[¶ 14] "A seizure occurs within the context of the Fourth Amendment only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if . . . a reasonable person would have believed that he was not free to leave." *Richter v. N.D. Dep't of Transp.*, 2010 ND 150, ¶ 10, 786 N.W.2d 716 (citations and quotation marks omitted). Schneider cites *State v. Langseth*, 492 N.W.2d 298 (N.D. 1992), to support his claim that the deputy's approach with his overhead lights flashing was a show of authority, effectuating a stop.

[¶ 15] In *Langseth*, a deputy sheriff came upon a stopped vehicle along a rural gravel road. 492 N.W.2d at 299. When the deputy pulled behind the vehicle and activated his patrol car warning lights, the vehicle drove ahead about twenty feet and the deputy followed with his warning lights flashing. *Id.* The deputy's following of the moving vehicle with lights flashing constituted a "pursuit." We explained, "While at first Langseth may have intended to check on the stopped van to see if the driver needed assistance, [the officer's] 'pursuit' with flashing lights as Langseth started to drive away converted the encounter into a seizure." *Id.* at 301. In *Langseth*, it was disputed which lights the officer used. Ultimately, this Court concluded that "whichever set of lights [the officer] used, the *pursuit* with flashing lights here converted the encounter into a stop by an official police vehicle." *Id.* (emphasis added). *Langseth* cites N.D.C.C. § 39–10–71, explaining, "Any driver of a motor vehicle who willfully fails or refuses to bring the vehicle to a stop, or who otherwise flees or attempts to elude, in any manner, a *pursuing police vehicle* or peace officer, when given a visual . . . signal to bring the vehicle to a stop, is guilty of a class A misdemeanor." N.D.C.C. § 39–10–71 (emphasis added). It is the *pursuit* with flashing lights that constitutes a seizure. *See also Franklin*, 524 N.W.2d at 604 ("The law distinguishes between the approach of an already stopped vehicle and the stop of a moving one.").

[¶ 16] In *State v. Halfmann*, the defendant "pulled to the side of the road of her own volition. It was only after she stopped that [the officer] turned on his amber lights." 518 N.W.2d 729, 731 (N.D. 1994). We concluded, "The use of amber lights here was a procedural precaution used by [the officer] to maintain traffic flow, and was not meant to inhibit [the defendant's] liberty," and the officer therefore "did not initially exercise his authority to restrain Halfmann's liberty." *Id.* (footnote omitted). Halfmann did not move her vehicle, and the officer did not pursue Halfmann.

[¶ 17] This case is similar to *Halfmann* because Schneider's vehicle was stopped on a gravel country road and the officer parked behind with flashing lights. Schneider was already stopped when the deputy parked behind Schneider's vehicle. Schneider did not move his vehicle, and the deputy did not pursue Schneider. Moreover, we noted, "Halfmann [did] not argue[ ] that she felt her liberty was restrained in any way." *Halfmann*, 518 N.W.2d at 731. Here, Schneider also failed to argue his liberty was restrained in any way. *See Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478 ("A seizure occurs . . . only when the officer . . . has in some way restrained the liberty of a citizen.").

[¶ 18] The district court found:

"The deputy appears to have activated flashing lights on his car. The deputy parked what appears to be at least a car length behind the defendant's car. The gravel road continues in front of the defendant's car, and there is another gravel road immediately to the left of the defendant's car. The defendant could have driven forward or could have traveled down the gravel road to the left. The deputy's car did not block the defendant's. The defendant's claim in his Brief that the deputy's 'light bar was activated to prevent the vehicle from leaving' is not supported by the evidence. It is not clear from the DVD which lights were activated on the deputy's car. More importantly, no evidence was presented that the defendant felt he was not free to leave. The defendant was ultimately handcuffed and placed in the deputy's car, but this was only after the defendant had granted the deputy consent to search."

[¶ 19]. "[W]e accord great deference to the [district] court's [findings of fact] in suppression matters." *State v. Loh,* 2000 ND 188, ¶ 4, 618 N.W.2d 477. It is Schneider's burden to prove that an illegal seizure occurred. *Sivertson,* 1997 ND 204, ¶ 6, 571 N.W.2d 137. Schneider failed to present evidence "a reasonable person would have believed that he was not free to leave." *Richter,* 2010 ND 150, ¶ 10, 786 N.W.2d 716 (citation and quotation marks omitted).

### IV

[¶ 20] The district court did not err by denying Schneider's motion to suppress evidence because Schneider failed to establish a prima facie showing an illegal seizure occurred, and the district court's findings of fact are not contrary to the manifest weight of the evidence. We affirm the district court's order denying Schneider's motion to suppress evidence.

[¶ 21] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, and DALE V. SANDSTROM, JJ., concur.

KAPSNER, Justice, dissenting.

[¶ 22] I respectfully dissent.

[¶ 23] For reasons articulated in my dissent in *Richter v. N.D. Dep't of Transp.,* 2010 ND 150, 786 N.W.2d 716, I would hold the officer's approach to Schneider's vehicle with flashing lights was a show of authority constituting a seizure. *Id.* at ¶ 25. At that point, a reasonable person would not feel he was free to leave the scene nor did Deputy Vyska have any reasonable and articulable suspicion any criminal activity was happening. By showing that the officer approached the vehicle under an assertion of the officer's authority, Schneider has established the prima facie case of illegal seizure because there is nothing in the record that asserts a reasonable and articulable basis to assume criminal activity.

[¶ 24] Relying on *State v. Langseth,* 492 N.W.2d 298, 301 (N.D.1992), to say that it was the officer's *pursuit* of Langseth's vehicle with flashing lights that converted that encounter into a stop is nonsensical to me. It was Langseth's decision to move the vehicle that caused the "pursuit" and, indeed, we do not generally want drivers choosing to drive away from officers who have activated their emergency lights of whatever color. *See* N.D.C.C. § 39–10–71. That is why it is irrelevant that Schneider "could have driven forward or could have traveled down the gravel road to the left." Someone in Schneider's position would not feel free to do so.

[¶ 25] I would reverse and allow Schneider to withdraw his guilty plea.

[¶ 26] Carol Ronning Kapsner