FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
DECEMBER 17, 2020
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 266

State of North Dakota,                                        Plaintiff and Appellee

  v.

Stephanie Ann Foote,                                        Defendant and Appellant

## No. 20200145

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Todd L. Cresap, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

John M. Gonzalez, Assistant State's Attorney, Minot, N.D., for plaintiff and appellee.

Danny L. Herbel, Bismarck, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1]   Stephanie Ann Foote appeals from an order denying her motion to suppress evidence and from the criminal judgment entered after she conditionally pled guilty to a charge of actual physical control (APC) of a motor vehicle while under the influence of alcohol. On appeal, Foote argues the district court erred in determining that she was not unconstitutionally seized and, thus, her motion to suppress should have been granted. We affirm the judgment.

I

[¶2]   On December 8, 2019, at approximately 2:15 a.m., Deputy Michael Miller and trainee Deputy Leif Binckley of the Ward County Sheriff's Department were on patrol. The officers observed a vehicle parked on an approach and decided to perform a welfare check. Miller testified there was ice behind the tires of the vehicle and skid marks on the ice from the tires spinning, leading him to believe the vehicle was stuck. He also testified that the temperature on that night was below zero and the vehicle was running.

[¶3]   Binckley approached the vehicle on the driver's side while Miller approached the vehicle on the passenger side. Binkley either instructed or requested that Foote roll down her window, and she complied. Foote explained that she had pulled over to call her sister and that when she tried to leave, she realized she was stuck. Miller testified that he "realized that this wasn't just a stuck vehicle and that this was probably going to be an APC situation" when Foote was explaining that she was stuck. He then took over the encounter, moved to the driver's side, and requested that Foote exit her vehicle.

[¶4]   When Foote exited her vehicle, Miller observed that she had difficulty maintaining her balance, her eyes were watery, and her speech was slurred. When she entered the patrol vehicle and sat in the front passenger seat, Miller detected a strong odor of alcoholic beverages and felt that she seemed extremely confused when answering his initial questions. Foote admitted to

having had a beer earlier in the evening, and at this point Miller requested she complete Standard Field Sobriety Tests, during which Miller recognized clues suggesting a possible blood alcohol count at or above the legal limit. Foote then consented to a preliminary breath test, which yielded a result over the legal limit. Miller informed Foote she was being placed under arrest for APC, and she was placed in the rear of the patrol vehicle and read her *Miranda* rights.

[¶5] Subsequently, an administrative hearing was held to consider whether Foote's driving privileges should be suspended. A criminal case was also brought against Foote, in which she filed a motion to suppress. The district court held a hearing on the motion to suppress. At the hearing, Foote argued Binckley instructed her to roll down the window, the instruction was in violation of the Fourth Amendment, and any evidence acquired subsequent to the instruction was inadmissible. During the hearing, the officer testified he was not investigating a crime when he came into contact with Foote but was performing a welfare check on a stuck vehicle. A written order followed, denying the motion to suppress. Foote then entered a conditional guilty plea to the charge of actual physical control.

II

[¶6] Foote argues the district court erred in denying her motion to suppress evidence. This Court has described the standard of review of a district court decision on a motion to suppress:

> [W]e defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. Our standard of review recognizes the importance of the district court's opportunity to observe the witnesses and assess their credibility. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Bohe*, 2018 ND 216, ¶ 9, 917 N.W.2d 497 (quoting *State v. Hawkins*, 2017 ND 172, ¶ 6, 898 N.W.2d 446).

[¶7]   Foote argues the district court erred in determining the original contact was done in a community caretaker role that did not violate the Fourth Amendment. The Fourth Amendment to the United States Constitution and N.D. Const. art. I, § 8, prohibit unreasonable searches and seizures. *State v. Reis*, 2014 ND 30, ¶ 10, 842 N.W.2d 845; *Richter v. N.D. Dep't of Transp.*, 2010 ND 150, ¶ 9, 786 N.W.2d 716; *Abernathey v. Dep't of Transp.*, 2009 ND 122, ¶ 8, 768 N.W.2d 485. Not all encounters between law enforcement officers and citizens constitute seizures. *Reis*, at ¶ 10; *Abernathey*, at ¶ 8.

[¶8]   "A seizure occurs within the context of the Fourth Amendment only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *State v. Schneider*, 2014 ND 198, ¶ 14, 855 N.W.2d 399 (citation omitted). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if . . . a reasonable person would have believed that he was not free to leave." *Id.* (citation omitted).

[¶9]   "In cases involving motor vehicles, the 'law distinguishes between the approach of an already stopped vehicle and the stop of a moving one.'" *Bridgeford v. Sorel*, 2019 ND 153, ¶ 9, 930 N.W.2d 139 (quoting *Abernathey*, 2009 ND 122, ¶ 8). An "officer's approach of a parked vehicle is not a seizure if the officer 'inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response.'" *Richter*, 2010 ND 150, ¶ 10 (quoting *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478). "A casual encounter between an officer and a citizen can become a seizure 'if a reasonable person would view the officer's actions—if done by another private citizen—as threatening or offensive.'" *Schneider*, 2014 ND 198, ¶ 10. "A consensual encounter becomes a seizure implicating the Fourth Amendment when, considering the totality of the circumstances, the questioning is 'so intimidating, threatening, or coercive that a reasonable person would not have believed himself free to leave.'" *Id.* at ¶ 11. (quoting *United States v. Flores-Sandoval*, 474 F.3d 1142, 1145 (8th Cir. 2007)).

[¶10] An officer is engaged in the role of community caretaker when the officer approaches a parked vehicle to inquire in a conversational manner whether the occupant is okay or needs assistance. *State v. Leher*, 2002 ND 171, ¶ 7, 653 N.W.2d 56. "A request that the suspect open the door or roll down the window

would seem equally permissible, but the same would not be true of an order that he do so. Likewise, the encounter becomes a seizure if the officer orders the suspect out of the car." *Abernathey*, 2009 ND 122, ¶ 11 (quoting *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329, 335 (N.D. 1987) (VandeWalle, J., concurring in result) (emphasis omitted)). "[A]n occupant of a vehicle has not been 'seized' when a law enforcement officer requests, rather than orders or commands, that the occupant open a window or exit a vehicle." *Abernathey*, at ¶ 12 (citations omitted).

III

[¶11] Foote argues the first unconstitutional seizure occurred when Binckley knocked on her window and instructed her to roll it down. The officers had noticed a vehicle parked on an approach around 2 a.m. on a cold December night and had stopped to perform a welfare check on the vehicle. There was conflicting testimony between the administrative hearing and the motion to suppress hearing as to whether Binckley instructed or requested that Foote roll down her window. This Court, in its review, "will not weigh conflicting evidence or judge the credibility of witnesses." *State v. Hennings*, 2015 ND 283, ¶ 9, 871 N.W.2d 473 (citations omitted). During the administrative hearing, Miller testified:

> Q. Okay, did you direct her to roll down her window?
>
> A. I — I was training on this date. My trainee instructed her to roll her window down. He then passed her ID to me, at what [sic] point then I had her exit the vehicle.

At the hearing on Foote's motion to suppress, Miller testified:

> A. It's a situation where he knocked on the window. The window was rolled down. So in my mind, I guess, in the admin — I just — the window was rolled down. He instructed her to roll the window down at which point they began speaking.
>
> Q. So he did instruct her to roll the window down?
>
> A. I didn't hear him say, ma'am, roll your window down, so I can't — I can't testify to that fact, sir.

4

Q. But you've already testified to that fact at the administrative hearing.

A. I — it was a word I used.

Q. So you're saying that was not truthful testimony that day?

A. It's — it's just — it's a word I use, sir.

[¶12] This Court will resolve conflicts in testimony in favor of affirmance. *Bohe*, 2018 ND 216, ¶ 9. The district court here found that the officer asked Foote to roll down her window and that the initial contact was done by law enforcement in the role of community caretaker. The court further found that Foote provided no indication that she felt compelled or otherwise intimidated to engage in this conversation. "Recognizing the importance of the trial court's opportunity to observe witnesses and assess their credibility, we accord great deference to the trial court's findings of fact in suppression matters." *State v. Taylor*, 2015 ND 100, ¶ 7, 862 N.W.2d 801 (quoting *Jerome*, 2002 ND 34, ¶ 6). Whether an officer communicated a request or an order is a question of fact that depends on the words used. The court did not have testimony on the words communicated to Foote, nor did it have much about the nonverbal aspects of the communication such as tone of voice, body language, context, and other considerations. The court's findings turn on credibility determinations about how one officer described the actions of another officer. The court's findings are supported by sufficient competent evidence, and its decision is not contrary to the manifest weight of the evidence. Foote was not seized in violation of the Fourth Amendment when Binckley asked that she roll down her window.

[¶13] Foote also argues that Miller instructed her to return to the patrol vehicle with him and that this constituted a second unconstitutional seizure. There was some conflicting testimony during the administrative hearing as to whether Miller requested or instructed Foote to exit her vehicle. Miller's testimony during the motion to suppress hearing, however, was undisputed. Counsel for Foote asked Miller, "And you asked her to come back to your vehicle; is that right?" Miller responded that he did. The district court found that Miller requested Foote exit the vehicle and that Foote provided no indication she was ordered, compelled, or otherwise intimidated into leaving her vehicle and going to Miller's patrol vehicle. The court's findings are

5

supported by sufficient competent evidence, and the court's decision is not contrary to the manifest weight of the evidence. Foote was not seized in violation of the Fourth Amendment when Miller asked that she exit her vehicle and return to the patrol vehicle with him.

[¶14] "[I]f an officer learns something during a public encounter with a person that causes a reasonable suspicion or probable cause, the encounter can justify further investigation, seizure, and even arrest. A public encounter does not foreclose the officer from making observations that reasonably lead to further action." *Abernathy*, 2009 ND 122, ¶ 16 (quoting *State v. Franklin*, 524 N.W.2d 603, 605 (N.D. 1994)). When Foote exited her vehicle, Miller observed that she had difficulty maintaining her balance, her eyes were watery, and her speech was slurred. Upon Foote's entering the front passenger seat of the patrol vehicle, Miller detected a strong odor of alcoholic beverages and felt that Foote seemed extremely confused when answering his initial questions. Miller testified that it was at this point when Foote was no longer free to leave. Assuming a seizure occurred after Foote had voluntarily entered the front passenger seat of the patrol vehicle, Miller had by then already observed enough to give him a reasonable and articulable suspicion of actual physical control.

[¶15] We conclude the court did not err in determining that Foote's Fourth Amendment rights were not violated in this case, and therefore the court did not err in denying Foote's motion to suppress evidence obtained as a result of that encounter.

IV

[¶16] The judgment is affirmed.

[¶17] Jon J. Jensen, C.J.
 Gerald W. VandeWalle
 Daniel J. Crothers
 Lisa Fair McEvers
 Jerod E. Tufte