2015 ND 1

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Rodney BROSSART, Defendant and Appellant.**

Nos. 20140024, 20140027.

Supreme Court of North Dakota.

Jan. 12, 2015.

Cameron D. Sillers (argued) and Quentin B. Wenzel (appeared), Langdon, N.D., for plaintiff and appellee.

Mark A. Friese (argued) and Bruce D. Quick (appeared), Fargo, N.D., for defendant and appellant.

McEVERS, Justice.

[¶ 1] Rodney Brossart appeals from a criminal judgment entered after a jury found him guilty of terrorizing, preventing arrest, and failing to comply with the law for estray animals. We affirm Brossart's convictions for preventing arrest and failing to comply with the estray law, but we reverse his conviction for terrorizing, and remand for a new trial on the terrorizing charge.

## I

[¶ 2] Brossart is a Nelson County landowner and farmer. On June 22, 2011, two of Brossart's adult children observed three cow-calf pairs loose on or near Brossart's property and they determined the cattle did not belong to Brossart. The cattle were secured in a fenced "missile site" Brossart leases. One of Brossart's children told him about the cattle after the cattle were secured.

[¶ 3] On June 23, 2011, Chris Anderson discovered three cow-calf pairs had escaped from his fenced property. Anderson tracked the cattle to Brossart's property and spoke to Brossart about the cattle. According to Anderson, Brossart informed him that he would have to buy the cattle back. Anderson returned to his farm and contacted the Nelson County Sheriff's Department.

[¶ 4] Eric Braathen, a deputy for the Nelson County Sheriff's Department, contacted Fred Frederikson, a licensed peace officer and a brand inspector for the North Dakota Stockmen's Association. While driving to Brossart's farm, Braathen and Frederikson saw Brossart pumping water from a field. Braathen introduced Frederikson to Brossart and Frederikson asked about the cattle and whether he could go look at them. According to Braathen, Brossart informed the officers "if you step foot on my property, you are going to not be walking away." The situation quickly escalated, Braathen attempted to arrest Brossart, Brossart resisted, and Braathen used a taser on Brossart multiple times before he was handcuffed.

[¶ 5] Brossart was charged with failing to comply with the estray chapter and preventing arrest. In July 2011, he was also charged with terrorizing, theft of property, and criminal mischief for the June 23, 2011, incident.

[¶ 6] Brossart moved to dismiss the charges or alternatively to suppress evidence. He argued the charge of failing to comply with the estray chapter must be dismissed because the cattle were not "estrays," the estray chapter did not apply, and he was in lawful possession of the "trespassing" cattle under N.D.C.C. § 36–11–10. He also argued the terrorizing charge must be dismissed because the United States Constitution protects free speech, the statement he made to law enforcement was protected speech, and it was not an unprotected "true threat." He alternatively argued any evidence obtained as a result of his unlawful seizure and arrest must be suppressed. He also claimed the charges must be dismissed because the police provoked and used excessive force against him. After a hearing, the district court denied Brossart's motion to dismiss and his motion to suppress.

[¶ 7] A jury found Brossart guilty of terrorizing, preventing arrest, and failing to comply with the estray chapter, but found him not guilty of theft and criminal mischief.

## II

[¶ 8] Brossart argues the district court erred by failing to dismiss his terrorizing charge as a matter of law and by failing to give his requested jury instructions. He claims his terrorizing conviction must be reversed because it was based on constitutionally protected speech. He contends the court erred by failing to instruct the jury on how to properly evaluate whether his statement constituted an unprotected "true threat."

## A

[¶ 9] A person is guilty of terrorizing under N.D.C.C. § 12.1–17–04, if the person "with intent to place another human being in fear for that human being's or another's

safety ... or in reckless disregard of the risk of causing such terror, disruption, or inconvenience, the person ... [t]hreatens to commit any crime of violence or act dangerous to human life[.]" Brossart does not challenge the constitutionality of N.D.C.C. § 12.1–17–04, but claims the speech his terrorizing conviction was based on was constitutionally protected as a matter of law and the district court erred by failing to dismiss the terrorizing charge.

■■■ [¶ 10] Whether speech is constitutionally protected is a question of law, which is fully reviewable on appeal. *State v. Boyle*, 2009 ND 156, ¶ 8, 771 N.W.2d 604. "We use caution in reviewing claims of constitutionally protected activity, and we independently scrutinize the record when free speech arguments are made to see if the charged conduct is protected." *Id.*

■■■ [¶ 11] "The First Amendment is applicable to the states through the Fourteenth Amendment, and precludes states from enacting laws 'abridging the freedom of speech.'" *State v. Backlund*, 2003 ND 184, ¶ 19, 672 N.W.2d 431. However, there are limits on free speech and not all speech is protected. *See In re A.R.*, 2010 ND 84, ¶ 9, 781 N.W.2d 644. "The First Amendment permits 'restrictions upon the content of speech in a few limited areas, which are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *Virginia v. Black*, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382–83, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992)).

■■■ [¶ 12] One type of speech that is not protected under the First Amendment and may be restricted is speech that is a "true threat." *Watts v. United States*, 394 U.S. 705, 707, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969); *Black*, 538 U.S. at 359, 123 S.Ct. 1536; *see also State v. Haugen*, 392 N.W.2d 799, 803 (N.D.1986). "[T]hreats are not constitutionally protected expression if the character, intent, and circumstances of the threat are narrowly circumscribed." *Haugen*, at 803. "'True threats' encompass those statements 'where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.'" *Black*, at 359, 123 S.Ct. 1536. "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with intent of placing the victim in fear of bodily harm or death." *Id.* at 360, 123 S.Ct. 1536. The speaker does not have to intend to carry out the threat. *Id.* "Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Id.* (quoting *R.A.V.*, 505 U.S. at 388, 112 S.Ct. 2538).

[¶ 13] Brossart claims his statement was not a true threat, but was a conditional comment and was similar to the speech the United States Supreme Court found was protected in *Watts*, 394 U.S. 705, 89 S.Ct. 1399 (1969). In *Watts*, the United States Supreme Court reversed the defendant's conviction for knowingly and willfully making any threat to take the life of or inflict bodily harm on the President, holding the defendant's speech did not constitute a "threat." *Id.* at 708, 89 S.Ct. 1399. The defendant was an eighteen-year-old male among a group of mostly young people at a public rally on the Washington Monument grounds in 1966. *Id.* at 706, 89 S.Ct. 1399. One group member suggested the young people should get more edu-

cation before expressing their views, and the defendant stated:

> They always holler at us to get an education. And now I have already received my draft classification as 1–A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J. They are not going to make me kill my black brothers.

*Id.* at 706, 89 S.Ct. 1399. The Court held the statute was constitutional on its face and required the government to prove a true "threat," which must be distinguished from constitutionally protected speech. *Id.* at 707–08, 89 S.Ct. 1399. The Court said the statute must be interpreted " 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wideopen, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.' " *Id.* at 708, 89 S.Ct. 1399 (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). The Court considered the expressly conditional nature of the statement, the context in which it was made, and the crowd's laughing reaction and determined the statement was political hyperbole and did not constitute a true threat. *Watts,* at 708, 89 S.Ct. 1399.

[¶ 14] The facts of this case are different from those in *Watts.* Braathen testified he and Frederikson encountered Brossart along the road while they were traveling to Brossart's farm, he introduced Frederikson to Brossart, Brossart refused to shake Frederikson's hand, Frederikson informed Brossart they were there about the stray cattle on his property, Frederikson said the cattle belonged to Brossart's neighbor, Brossart asked if they had any proof, and Frederikson stated that he had the brand papers for Anderson's cattle. Braathen testified Frederikson informed Brossart they would like to go on his property and look at the cattle to verify ownership, Brossart said he wanted to go back to work, Braathen told him they needed to take care of it now, Brossart stated "you step foot on my property, you are going to not be walking away," and Frederikson held up his arms and told Brossart not to make any threats. Braathen testified Brossart was very hostile when they approached him, he was angry as soon as Braathen exited his patrol vehicle, and "[h]e had no intentions of cooperating … from the moment we got there, he wanted a confrontation with us." Frederikson's testimony was consistent with Braathen's testimony. Frederikson testified the situation escalated very quickly, within 30 seconds Brossart told them "if you go on my land, you won't walk off," he told Brossart not to talk like that, and he tried to settle the situation down. Frederikson also testified that he took Brossart's comment as a serious threat because Brossart seemed like he was ready for a fight or wanted to hurt someone. Frederikson testified: 1) Brossart attempted to go back to work, Braathen informed Brossart they were going to "get this taken care of," Brossart refused and attempted to go back to work; 2) Braathen told Brossart multiple times that he was under arrest; 3) Braathen advised Brossart multiple times that he could be tased if he did not comply; 4) Brossart's son was present, Brossart told his son to "get that" referring to something in the truck, Frederikson stopped Brossart's son from going to the truck, and Frederikson saw a rifle in the truck. There was evidence Brossart resisted, Braathen used the taser on Brossart multiple times, and eventually Brossart was handcuffed. A video of the incident was also presented as evidence and

Braathen and Frederikson's testimony was consistent with the video.

[¶ 15] We have said the issue of whether words used in a communication constitute a true threat is a question for the jury. *Haugen*, 392 N.W.2d at 805. However, we have also said there are some cases, like *Watts*, when a court should determine as a matter of law that a particular threat does not constitute a true threat and is protected speech. *Id.* This case is different from *Watts*. Although Brossart's statement about going on his property was conditional, the context of the statement was very different from the context in *Watts*. The officers approached Brossart to talk to him about stray cattle on his property and to attempt to return the cattle to their owner. Brossart told the officers they would not walk off his land if they went on it, there was evidence the situation escalated quickly and became tense and hostile, and there was evidence the recipients believed the comment was a serious threat. Evidence also revealed Brossart had a rifle in his truck and he told his son to "get it" referring to something in the truck. Unlike *Watts*, Brossart's statement was not political hyperbole communicated at a political rally. Under the facts and circumstances presented in this case, we cannot conclude as a matter of law that Brossart's communication is protected speech and does not constitute a true threat.

B

[¶ 16] Brossart argues the district court failed to properly instruct the jury and denied his request for an essential jury instruction on whether his statement constituted a true threat. Jury instructions must correctly and adequately inform the jury of the applicable law. *State v. Romero*, 2013 ND 77, ¶ 16, 830 N.W.2d 586. On appeal, we review the instructions as a whole to determine whether they correctly and adequately advise the jury of the law. *Id.* The district court may refuse to give a requested instruction if it is irrelevant or does not apply. *State v. Clark*, 2012 ND 135, ¶ 8, 818 N.W.2d 739. The court is not required to give jury instructions using the specific language the defendant requested. *Romero*, at ¶ 16.

[¶ 17] In this case, the district court's jury instruction for the terrorizing charge stated:

A person who, with intent to place another in fear for that person's or another's safety or in reckless disregard of the risk of causing such terror, and the person threatens to commit any crime of violence or act dangerous to human life, is guilty of Terrorizing.

*Essential Elements of Offense*

The State's burden of proof is satisfied if the evidence shows, beyond a reasonable doubt, the following essential elements:

1. On or about the 23rd day of June, 2011, in Nelson County, North Dakota, the Defendant, Rodney B. Brossart;

2. With intent to place another in fear for that person's or another person's safety or in reckless disregard of the risk of causing such terror;

3. Threatened to commit any crime of violence or act dangerous to human life; and

4. The non-existence of a defense.

The court also gave instructions on the definitions of "intentionally" and "recklessly."

[¶ 18] Brossart requested the court include an instruction related to his argument that his speech was protected, stating:

*CIVIL LIBERTY:* The First Amendment provides that Congress shall make no law abridging the freedom of Speech. It is only true threats that are denied First Amendment protection. The First Amendment prohibits prosecution except when a speaker conveys a serious expression of intent to inflict injury or intend to incite an immediate breach of the peace. In order to prove Mr. Brossart committed the offense of Terrorizing, the State must prove beyond a reasonable doubt that Mr. Brossart's speech conveyed a serious expression of intent to inflict injury or intended to incite an immediate breach of the peace.

During closing argument, Brossart argued his comment was not a threat, Frederikson did not act threatened after the comment was made, the comment was a conditional statement that required the officers to go onto his land and the officers testified they were not going to go on the property without a search warrant or consent, he has a right to freedom of speech, and the comment may have been a dumb thing to say but it was not a crime.

[¶ 19] To be convicted of terrorizing under N.D.C.C. § 12.1–17–04, the State must prove: (1) the defendant intended to cause another person to fear for his or another person's safety or acted with reckless disregard of the risk of causing such fear, and (2) the defendant made a threat to commit a "crime of violence or act dangerous to human life." *See State v. Laib,* 2005 ND 191, ¶ 8, 705 N.W.2d 815. The court instructed the jury on the elements of the offense and the definitions of "intent" and "reckless," but the court did not provide an instruction defining "threat." Whether a communication constitutes a threat is a question for the jury. *Haugen,* 392 N.W.2d at 805. Section 12.1–17–04, N.D.C.C., does not specifically define "threat," but we have said threats are

"'statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.'" *State v. Curtis,* 2008 ND 93, ¶ 5, 748 N.W.2d 709 (quoting *Black,* 538 U.S. at 359, 123 S.Ct. 1536). We have also recognized that jurisdictions are split in deciding what standard applies to determine whether a communication constitutes a threat. *Curtis,* at ¶ 5; *see also United States v. Elonis,* 730 F.3d 321, 329–32 (3rd Cir.2013), *cert. granted,* ––– U.S. ––––, 134 S.Ct. 2819, 189 L.Ed.2d 784 (2014). This Court has suggested an objective standard applies and the facts and circumstances must be considered from the perspective of a reasonable person in the recipient's position. *See Curtis,* at ¶ 5; *State v. Dahl,* 2009 ND 204, ¶ 7, 776 N.W.2d 37; *see also Laib,* at ¶ 13 ("A communication, either verbal or nonverbal, is sufficient to be a threat if a reasonable person could conclude that it was a threat under the circumstances.").

[¶ 20] Brossart argued that his statement was not a threat, that it was protected speech, and he requested a jury instruction explaining that true threats are not protected speech and defining what constitutes a threat. Whether a statement or communication constitutes a threat is a question for the jury. *Haugen,* 392 N.W.2d at 805. The district court did not give the jury any instructions explaining what constitutes a threat and that communications that are not a "true threat" are protected speech. We conclude the district court did not correctly and adequately inform the jury of the applicable law and erred by failing to include a jury instruction defining what constitutes a "threat." The district court was not required to use the language of Brossart's requested instruction, but Brossart was entitled to an instruction defining "threat" and instruct-

ing the jury to consider the facts and circumstances from the perspective of a reasonable person in the recipient's position. We reverse Brossart's terrorizing conviction and remand for a new trial on that charge.

### III

[¶ 21] Brossart argues his conviction for failing to comply with the law for estray animals should be reversed.

### A

[¶ 22] Brossart argues the district court erred by declining to dismiss the charge as a matter of law because the estray chapter, N.D.C.C. ch. 36–13 [1], does not apply under the facts of this case. He claims the cattle on his property were not "estray" animals under the statute, and therefore the estray chapter did not apply and he did not have a duty or obligation to contact the sheriff or brand inspector.

[¶ 23] The interpretation of a statute is a question of law, which is fully reviewable on appeal. *State v. Kuruc*, 2014 ND 95, ¶ 32, 846 N.W.2d 314. We first look at the language of the statute, giving words their plain, ordinary, and commonly understood meaning, unless the word is specifically defined by statute or a contrary intention plainly appears. N.D.C.C. § 1–02–02. "Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs in the same or subsequent statutes, except when a contrary intention plainly appears." N.D.C.C. § 1–01–09; *see also Northern X–Ray Co., Inc. v. State By and Through Hanson*, 542 N.W.2d 733, 735–36 (N.D.1996). Statutes are construed as a

whole and are harmonized to give meaning to related provisions, and are interpreted in context to give meaning and effect to each word, phrase, and sentence. *Kuruc*, at ¶ 32. " 'In construing statutes, we consider the context of the statutes and the purposes for which they were enacted.' " *Id.* (quoting *Nelson v. Johnson*, 2010 ND 23, ¶ 12, 778 N.W.2d 773). "When statutes relate to the same subject matter, this Court makes every effort to harmonize and give meaningful effect to each statute." *Kuruc*, at ¶ 32. We construe statutes in a practical manner and presume the legislature did not intend an absurd or ludicrous result. *Chisholm v. State*, 2014 ND 125, ¶ 9, 848 N.W.2d 703.

[¶ 24] Section 36–13–08, N.D.C.C., provided, "Any person that takes possession of an estray and willfully fails to comply with this chapter is guilty of a class B misdemeanor." Section 36–13–01, N.D.C.C., regulated possession of an estray:

A person may take possession of an estray when it is on property that the person owns or controls, provided the person does not know who owns the estray. As soon as practicable the person shall examine the estray to determine the presence and identity of any brand, the location of the brand, and any other marks or scars that may identify the estray. The person shall notify the sheriff of the county in which the estray was found or the chief brand inspector. Once notified, the sheriff or the chief brand inspector shall record the date and time of the notification and all information obtained from the person which may be helpful in determining ownership of the estray. The chief brand

---

1. Chapter 36–13, N.D.C.C., was repealed and re-codified at N.D.C.C. ch. 4.1–75, effective July 1, 2013. *See* 2013 N.D. Sess. Laws ch. 72, §§ 4, 8. Brossart was charged with failing to comply with the estray chapter in 2011, and therefore the prior version of the chapter applies.

inspector shall direct a brand inspector to examine the estray for marks and brands.

[¶ 25] Brossart claims these provisions do not apply in this case because the cattle were not "estrays." Chapter 36–13, N.D.C.C., did not specifically define "estray," but Brossart contends the definition of estray from N.D.C.C. § 36–22–01 applied and under that definition the cattle on his property were not estrays.

[¶ 26] In 2011, N.D.C.C. ch. 36–22 contained provisions relating to the sale of estrays. Section 36–22–01, N.D.C.C., was entitled "Estray defined" and provided, "Any marked or branded cattle, horse, or mule found at any livestock market, to which a shipper cannot produce title or satisfactory evidence of ownership, is considered to be an estray." The plain language of this provision does not limit estrays to animals that meet this definition; rather, it states that animals that meet this definition at any livestock market will be considered estrays. Other animals may also be considered estray. This Court has not specifically defined estrays, but has said, "One of the basic elements characterizing estrays is that they are away from the control of the owner, with no knowledge of their location." *State v. Brewster*, 72 N.D. 409, 411, 7 N.W.2d 742, 744 (1943). Black's Law Dictionary defines estray as "A valuable tame animal found wandering and ownerless; an animal that has escaped from its owner and wanders about.... An animal cannot be an estray when on the range where it was raised and where its owner permits it to run, and esp. when the owner is known to the party who takes the animal." Black's Law Dictionary 631 (9th ed.2009). Estrays are not limited to only those animals included in the definition of N.D.C.C. § 36–22–01. Furthermore, our interpretation is consistent with the current version of the estray chapter,

N.D.C.C. ch. 4.1–75, which specifically defines estray, stating, "In this chapter, unless the context otherwise requires, 'estray' means cattle, horses, or mules, whether branded or unbranded, whose ownership has not been determined." N.D.C.C. § 4.1–75–01.

[¶ 27] Moreover, limiting the definition of "estray" to only those animals that meet the requirements of N.D.C.C. § 36–22–01 and applying that definition to N.D.C.C. ch. 36–13 would lead to an absurd result. Chapter 36–13, N.D.C.C., contained regulations relating to a person who took possession of an estray located on property that person owned or controlled. Under Brossart's interpretation, the definition of estray contained in N.D.C.C. § 36–22–01 was limited to marked or branded cattle, horses, or mules found at a livestock market. If we were to adopt Brossart's interpretation, N.D.C.C. ch. 36–13 would become meaningless. We conclude an estray animal for purposes of N.D.C.C. ch. 36–13 is not limited to the definition provided in N.D.C.C. § 36–22–01.

[¶ 28] Brossart also claims N.D.C.C. ch. 36–13 did not apply and he was not required to comply with the notification requirement because the cattle on his property were trespassing and his possession of the cattle was governed by N.D.C.C. § 36–11–10. Section 36–11–10(1), N.D.C.C., states:

The person suffering damages by reason of the trespass of any livestock may take up the offending livestock. The person suffering damages shall notify the owner, or the person in possession of the livestock at the time of the trespass, of the seizure of the livestock without unnecessary delay, if the owner or person in possession is known to the person suffering damages and is a resident of, and present within, the county in which the trespass occurred. The person suf-

fering damages may retain the livestock in that person's custody until:

a. The damages sustained by reason of the trespass and the costs in the action to recover the damages have been paid; or

b. Good and sufficient security for the payment of the damages and costs is given, provided the security is approved by a district judge serving the county in which the livestock is taken up.

Any livestock that goes through, over, or under a lawful fence is considered trespassing livestock for purposes of N.D.C.C. ch. 36–11. N.D.C.C. § 36–11–09.

[¶ 29] Brossart argues the cattle were trespassing under N.D.C.C. ch. 36–11, and therefore he was not required to comply with the notification requirements of the estray chapter. Brossart's argument presumes that both the trespassing and estray chapters cannot apply in the same case, and the estray notification requirements do not apply if a person retains "trespassing" livestock under N.D.C.C. ch. 36–11. However, Brossart does not provide an adequate explanation or cite authority supporting his claim that the estray chapter notice requirements do not apply if the cattle were trespassing. We will not decide this issue because it was not properly raised and supported. *See State v. Carpenter*, 2011 ND 20, ¶ 10, 793 N.W.2d 765 (arguments not adequately articulated, supported, and briefed will not be considered).

[¶ 30] We conclude the estray chapter applies under the facts of this case. It was undisputed that the cattle had escaped from their owner and were wandering. The cattle were estrays for purposes of N.D.C.C. ch. 36–13. The State alleged and presented evidence the cattle were contained in a fenced area of Brossart's property, Brossart took posses-

sion of the estray cattle, Brossart did not know who the cattle belonged to before Anderson approached him about the cattle the next day, and Brossart did not contact either the sheriff or the chief brand inspector about the cattle. We conclude the district court did not err in denying Brossart's motion to dismiss the charge of failing to comply with the estray chapter.

B

[¶ 31] Brossart argues there was not sufficient evidence to sustain his conviction for failing to comply with the estray chapter, because there was undisputed evidence his adult children secured the cattle in the missile site and he is not accountable for his children's actions.

[¶ 32] Brossart moved for judgment of acquittal under N.D.R.Crim.P. 29 at the conclusion of the State's case, arguing the State did not meet its burden of proof for the estray charge. The court denied the motion. Brossart renewed his motion at the conclusion of the presentation of evidence, which the court also denied.

[¶ 33] To grant a judgment of acquittal, the district court must find the evidence is insufficient to sustain a conviction. *State v. Gonzalez*, 2000 ND 32, ¶ 15, 606 N.W.2d 873. " 'A conviction rests upon insufficient evidence only when no rational factfinder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor.' " *State v. Ostby*, 2014 ND 180, ¶ 20, 853 N.W.2d 556 (quoting *State v. Coppage*, 2008 ND 134, ¶ 24, 751 N.W.2d 254). The defendant has the burden to show the evidence, viewed in the light most favorable to the verdict, permits no reasonable inference of guilt. *Ostby*, at ¶ 20. On

appeal, we review the record to determine " 'if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction.' " *Id.* (quoting *Coppage*, at ¶ 24).

[¶ 34] There was evidence the cattle were secured on land Brossart leases, Brossart's adult children work on the farm, and Brossart is their employer. Brossart's son testified Brossart is in charge of the farm, Brossart makes the final decisions, and he notified Brossart that he secured the cattle shortly after the cattle were locked in the enclosure. Brossart's son testified that he initially believed the cattle were their cattle, but upon further inspection he determined the cattle did not belong to them. There was evidence Brossart and his family did not contact either the sheriff or the chief brand inspector about the cattle. There was no evidence Brossart knew who the cattle belonged to until Anderson approached him about the cattle the day after Brossart took possession of the estrays. Viewing the evidence in the light most favorable to the State, we conclude a rational factfinder could have found Brossart was guilty of failing to comply with the estray chapter.

## C

[¶ 35] Brossart contends the court erred in denying his request for a jury instruction, which he claims outlined North Dakota law permitting a person to retain trespassing livestock until damages are paid or sufficient security is provided. Brossart was charged with failing to comply with the estray chapter, based on allegations that he failed to notify the sheriff or chief brand inspector of his possession of the estray cattle. Whether he could retain the cattle until any alleged damages were paid was irrelevant to the charge. We conclude the district court did not err

in refusing to give Brossart's requested instruction.

## IV

[¶ 36] Brossart argues his conviction for preventing arrest should be reversed. He contends the district court erred in denying his motion to suppress evidence resulting from his unlawful seizure. He also claims excessive force was used to make the arrest.

## A

[¶ 37] Brossart moved to suppress evidence obtained as a result of his unlawful seizure. He claims he was unlawfully seized when the officers approached him and refused to allow him to return to work, he repeatedly requested to return to work, the officer told him to stay where he was, and the officer did not have reasonable suspicion of a crime because he had lawful authority to detain the trespassing cattle.

[¶ 38] In reviewing a decision on a motion to suppress, we defer to the district court's findings of fact. *State v. Gatlin*, 2014 ND 162, ¶ 4, 851 N.W.2d 178. We recognize the district court is in a better position to assess the witnesses' credibility and weigh the evidence, and therefore conflicts in testimony will be resolved in favor of affirmance. *Id.* Generally, the district court's decision will not be reversed if there is sufficient competent evidence supporting the findings and if the decision is not contrary to the manifest weight of the evidence. *Id.* Questions of law are fully reviewable. *Id.* Whether a finding of fact meets a legal standard is a question of law. *State v. Boehm*, 2014 ND 154, ¶ 8, 849 N.W.2d 239. The existence of probable cause to arrest is a question of law. *Id.*

[¶ 39] All searches and seizures must be reasonable under the

Fourth Amendment of the United States Constitution. *See State v. Olson*, 2007 ND 40, ¶ 9, 729 N.W.2d 132. Not all encounters between law enforcement and citizens are seizures implicating the Fourth Amendment. *Engstrom v. North Dakota Dep't of Transp.*, 2011 ND 235, ¶ 9, 807 N.W.2d 602. "A seizure has occurred 'only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " *State v. Heitzmann*, 2001 ND 136, ¶ 9, 632 N.W.2d 1 (quoting *State v. Boline*, 1998 ND 67, ¶ 25, 575 N.W.2d 906). " '[M]ere police questioning does not constitute a seizure.' " *State v. Schneider*, 2014 ND 198, ¶ 11, 855 N.W.2d 399 (quoting *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). It is not a seizure for an officer to approach and talk to a person in a public place. *Brewer v. Ziegler*, 2007 ND 207, ¶ 19, 743 N.W.2d 391. " 'As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.' " *Schneider*, at ¶ 11 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). " '[I]f an officer learns something during a public encounter with a person that causes a reasonable suspicion or probable cause, the encounter can justify further investigation, seizure, and even arrest.' " *Schneider*, at ¶ 9 (quoting *State v. Franklin*, 524 N.W.2d 603, 605 (N.D. 1994)).

[¶ 40] Police may detain an individual for investigative purposes if the officer has reasonable and articulable suspicion criminal activity is afoot. *Olson*, 2007 ND 40, ¶ 11, 729 N.W.2d 132. To determine whether an investigative stop is valid, the court must consider the totality of the circumstances and determine whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the person was, or was about to be, engaged in unlawful activity. *Id.* An arrest must be supported by probable cause. *City of Devils Lake v. Grove*, 2008 ND 155, ¶ 11, 755 N.W.2d 485. Probable cause exists when " 'the facts and circumstances within police officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing an offense has been or is being committed.' " *Id.* (quoting *Hoover v. Director, N.D. Dep't of Transp.*, 2008 ND 87, ¶ 9, 748 N.W.2d 730).

[¶ 41] In denying Brossart's motion to suppress, the district court found Anderson spoke to Brossart about the cattle, Brossart informed Anderson that he could "buy them back," Anderson called the sheriff's office, Braathen and Frederikson met with Anderson, Anderson gave Frederikson brand papers showing he owned the cattle, and Braathen and Frederikson went to Brossart's farm to arrange for Anderson to get the cattle back. The court found the officers located Brossart pumping water across a township road, Braathen introduced Frederikson to Brossart, and Brossart refused to shake Frederikson's hand. The court found Frederikson informed Brossart they were there to get Anderson's cattle back, Brossart got upset and asked if they had any proof, Frederikson said they had Anderson's brand papers, Frederikson and Braathen were going to look at the cattle, and Brossart said "if you go onto the property you're not coming back." The court found Frederikson took Brossart's statement as a threat and told Brossart not to make any threats. The court found Braathen told Brossart they were going to take care of getting the cattle returned,

Brossart said he was going to finish what he was doing, Braathen told Brossart he would be arrested if he did not cooperate, Brossart said "show me the writ," and Braathen told Brossart he was under arrest. The court found Brossart could be lawfully arrested for a violation of N.D.C.C. § 36–13–08 when he was informed the cattle were Anderson's and he refused to cooperate in their recovery. *See* N.D.C.C. § 36–13–08 (a person who takes possession of an estray and willfully fails to comply with the estray chapter, including the notification requirement, is guilty of a class B misdemeanor). The court found there were also sufficient grounds to arrest Brossart for terrorizing after he threatened the officers. *See* N.D.C.C. § 12.1–17–04.

[¶ 42] Giving deference to the district court's findings of fact, we conclude Brossart was not seized until after he threatened the officers. At that point, there was probable cause to arrest Brossart. The court did not err in denying the motion to suppress.

B

[¶ 43] Brossart argues the district court should have dismissed the preventing arrest charge as a matter of law because the officers used excessive force to make the arrest. He claims there was evidence he did not forcibly resist or flee, he attempted to return to work and terminate further discussions with the officers, he asked why he was being arrested, and the officers responded by tasing him repeatedly. He contends the officers' conduct was unnecessary, brutal, excessive, and unconstitutional.

■ [¶ 44] Section 12.1–05–03, N.D.C.C., provides that a person is justified in using force upon another person to defend himself against danger of unlawful bodily injury or detention by another, ex-

cept the person is "not justified in using force for the purpose of resisting arrest, execution of process, or other performance of duty by a public servant under color of law, but excessive force may be resisted." A defendant's forceful resistance to an arrest is not justified unless the arresting officers use "excessive force." *State v. Brossart*, 2007 ND 39, ¶ 13, 729 N.W.2d 137. This Court has held the issue of whether officers used excessive force is a question of fact, and the defendant may "raise the issue to the jury and offer his resistance as a justification defense to the preventing-arrest charge." *Id.* at ¶ 14.

■ [¶ 45] Here, the district court declined to dismiss the preventing arrest charge as a matter of law and found there was at least a question of fact whether excessive force was used. The court properly determined the issue was a question of fact for the jury. The court gave a jury instruction on self defense against a law officer for the preventing arrest charge, including an instruction that "a person is justified in using force to resist excessive force used by a public servant under color of law." The issue was raised before the jury and the court instructed the jury that a person is justified in using force to resist excessive force by an officer. The jury found Brossart guilty of preventing arrest. We conclude the district court did not err in denying Brossart's motion to dismiss the preventing arrest charge as a matter of law.

V

[¶ 46] Brossart argues he did not receive a fair trial because the court refused to give his requested jury instructions, including instructions about causation and defense of property as an additional element of the terrorizing and estray charges.

[¶ 47] "On appeal, we review jury instructions as a whole to decide whether the instructions 'adequately and correctly inform the jury of the applicable law, even though part of the instruction standing alone may be insufficient or erroneous.'" *Romero*, 2013 ND 77, ¶ 16, 830 N.W.2d 586 (quoting *State v. Barth*, 2001 ND 201, ¶ 12, 637 N.W.2d 369). It is sufficient if the jury instructions considered as a whole correctly advise the jury of the law, even if part of the instructions standing alone may be insufficient. *Romero*, at ¶ 16. The court may refuse to give a requested instruction, if the instruction is irrelevant or does not apply. *State v. Kirkpatrick*, 2012 ND 229, ¶ 31, 822 N.W.2d 851. The district court is not required to give jury instructions in the specific language the defendant requests. *Romero*, at ¶ 16.

[¶ 48] For each offense charged, Brossart requested the court give a causation instruction stating:

A criminal defendant is neither liable nor culpable for criminal conduct unless the government proves causation beyond a reasonable doubt. Causation may be found where the result would not have occurred but for the conduct of the accused operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the accused clearly insufficient.

In deciding whether to give the requested instructions, the district court indicated it did not understand how the instructions fit into this case. Brossart argued the instructions were necessary because his theory of the case was that other people's actions caused the responses and constituted a superseding or intervening causation. The court denied the requested instruction, stating that the State had to prove the elements of the respective offenses and that Brossart committed the crimes and

the instructions already allowed Brossart to argue another person caused the crime by putting the cattle on the property or allowing the cattle to run at large. The court said the State was required to prove Brossart committed the charged crimes, he will be found not guilty if the jury determines the State did not meet its burden, and the court did not want to include additional instructions that would confuse the jury because it was not clear how these instructions applied to this case.

[¶ 49] The court instructed the jury on the essential elements for each offense, including that the State had the burden to prove Brossart committed the offense with the required culpability. As explained under N.D.C.C. § 12.1–02–05, "Causation may be found where the result would not have occurred but for the conduct of the accused operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the accused clearly insufficient." While Brossart's children originally detained the cattle, the statute requires the conduct of the accused to be "clearly insufficient" in order to shift causation to another. Based on the evidence presented here, the causation instructions were not relevant in this case. *Cf. State v. Addai*, 2010 ND 29, ¶ 57, 778 N.W.2d 555 (defendant charged with murder, causation instruction given when there was evidence more than one person may have stabbed the victim).

[¶ 50] Brossart argues the district court did not properly instruct the jury on his requested defense of property instruction related to the terrorizing and estray charges. The court gave a general defense of property instruction; however, Brossart argues the court failed to include the instruction as an additional element of either charge and included the instruction before the instructions about affirmative defenses, which the defendant had the bur-

den of proof. For each charge, the district court instructed the jury on the essential elements the State had the burden to prove beyond a reasonable doubt, including the non-existence of a defense. The court's instruction for use of force in defense of premises and property was included after other defense instructions. The affirmative defense instructions, which were specifically labeled as affirmative defenses, were included following the defense of property instruction. The district court correctly and adequately instructed the jury.

[¶ 51] Brossart also claims he requested numerous other instructions but the district court failed to give these instructions. Other than conclusory assertions, Brossart does not explain why the district court's instructions did not correctly inform the jury of the law. Reviewing the instructions as a whole, we conclude the jury instructions correctly and adequately advised the jury of the applicable law.

## VI

[¶ 52] We have considered any remaining issues or arguments, and we conclude they are either unnecessary to our decision or are without merit. We affirm Brossart's convictions for failing to comply with the estray chapter and preventing arrest. We reverse Brossart's conviction for terrorizing and remand for a new trial on that charge.

[¶ 53]   GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., and RONALD E. GOODMAN, S.J.

[¶ 54] The Honorable RONALD E. GOODMAN, S.J., sitting in place of Kapsner, J., disqualified.