2015 ND 130

**C.T. MARHULA, Plaintiff and Appellant**

v.

**GRAND FORKS CURLING CLUB, INC., Defendant and Appellee.**

**No. 20140298.**

Supreme Court of North Dakota.

May 27, 2015.

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Jon J. Jensen, Judge.

David C. Thompson, Grand Forks, N.D., for plaintiff and appellant.

Theodore T. Sandberg, Grand Forks, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] C.T. Marhula appealed from a judgment dismissing his action against Grand Forks Curling Club, Inc., for improper termination of his membership in the Club. Because we conclude the district court erred in determining the threshold membership requirements under N.D.C.C. § 10–33–81 of the Nonprofit Corporations Act applied to bar Marhula's action against the Club for violating his individual rights under N.D.C.C. § 10–33–62, we reverse

and remand for the court to address the merits of Marhula's claim.

## I

[¶ 2] Marhula was a member of the Club, a nonprofit corporation, from the mid–1990s until January 15, 2012, when the Club's board of directors, without prior notice, summarily terminated his membership and refunded his annual dues because the board "thought that C.T. was acting not in good faith with our club." The president of the Club during the relevant time frame explained:

> We were in the process of trying to figure out how to raise money for a new curling club and had a lot of discussions with our members on how to go about it, different sites, different options, and C.T. was going to the city, to the park district, to the Blue Line Club board, talking to all these entities about the curling club, about its options, without any permission from the board to do such.

[¶ 3] Marhula sued the Club alleging improper termination of his membership under N.D.C.C. § 10–33–62 and seeking reinstatement, an order compelling the Club to document that its actions were erroneous, and damages. Following a bench trial, the district court granted the Club's motion to dismiss the action. The court concluded that Marhula could not maintain the action on his own because N.D.C.C. § 10–33–81 of the Nonprofit Corporations Act, relating to equitable remedies for members of a nonprofit corporation, required that the action be brought by the lesser of either 50 members with voting rights or 10 percent of the membership with voting rights in the Club. The court also dismissed Marhula's alternative common law claim of a due process violation because Marhula failed to demonstrate that he was deprived of a valuable right.

## II

[¶ 4] Marhula argues the district court erred in dismissing the action because the threshold membership requirements of N.D.C.C. § 10–33–81 do not apply to this action asserting a violation of his individual rights under N.D.C.C. § 10–33–62.

[¶ 5] This case requires an analysis of the interplay between two statutes, which presents a question of statutory construction fully reviewable on appeal. *See Haugland v. City of Bismarck*, 2012 ND 123, ¶ 47, 818 N.W.2d 660. In interpreting statutes, we first look at the language and give words their plain, ordinary, and commonly understood meaning. *See* N.D.C.C. § 1–02–02. We construe statutes as a whole and harmonize them to give meaning to related provisions, and interpret them in context to give meaning and effect to each word, phrase, and sentence. *See State v. Brossart*, 2015 ND 1, ¶ 23, 858 N.W.2d 275. If a general statutory provision conflicts with a specific provision in the same or another statute, "the two must be construed, if possible, so that effect may be given to both provisions." N.D.C.C. § 1–02–07. Only when the conflict between the two provisions is irreconcilable should resort be made to the "particular controls general" rule of statutory construction. *State ex rel. Dep't of Human Servs. v. North Dakota Ins. Reserve Fund*, 2012 ND 216, ¶ 12, 822 N.W.2d 38; N.D.C.C. § 1–02–07. We also construe statutes in a practical manner and presume the legislature did not intend an absurd or ludicrous result. *See Brossart*, at ¶ 23.

[¶ 6] Section 10–33–62, N.D.C.C., sets forth the requirements for terminating membership in a nonprofit corporation:

1. A member may not be expelled or suspended, and a membership may not be terminated or suspended, except pursuant to a procedure that is fair and reasonable and is carried out in good faith. This section does not apply to the termination of a membership at the end of a fixed term.
2. A procedure is fair and reasonable when it is fair and reasonable taking into consideration all of the relevant facts and circumstances. In addition, a procedure is fair and reasonable if it provides:
   a. Not less than fifteen days' prior written notice of the expulsion, suspension, or termination, and the reasons for it; and
   b. An opportunity for the member to be heard, orally or in writing, not less than five days before the effective date of the expulsion, suspension, or termination by a person authorized to decide that the proposed expulsion, termination, or suspension not take place.
3. A proceeding challenging an expulsion, suspension, or termination, including a proceeding in which defective notice is alleged, must be commenced within one year after the effective date of the expulsion, suspension, or termination.
4. The expulsion, suspension, or termination of a member does not relieve the member from obligations the member may have to the corporation for dues, assessments, or fees or charges for goods or services.

[¶ 7] Section 10–33–81, N.D.C.C., addresses equitable remedies for members of a nonprofit corporation:

If a corporation or an officer or director of the corporation violates this chapter, a court in this state, in an action brought by at least fifty members with voting rights or ten percent of the members with voting rights, whichever is less, or by the attorney general, may grant equitable relief it considers just and reasonable in the circumstances and award expenses, including reasonable attorney's fees and disbursements to the members. The court may award the attorney general reasonable attorney's fees, investigation fees, costs, and expenses of any investigation and action brought by the attorney general under this chapter.

[¶ 8] The district court relied on the decision of the Minnesota Court of Appeals in *Jensen v. Duluth Area YMCA*, 688 N.W.2d 574 (Minn.Ct.App.2004), where the court interpreted Minn.Stat. Ann. § 317A.411 (2000) and Minn.Stat. Ann. § 317A.467 (2000) of the Minnesota Nonprofit Corporation Act, the statutory equivalents to N.D.C.C. §§ 10–33–62 and 10–33–81, respectively. In that case, an individual sued a nonprofit corporation for terminating his membership without following the termination procedures set forth under Minn.Stat. Ann. § 317A.411. *Jensen,* at 576–77. The court affirmed dismissal of the action because the terminated individual failed to meet the threshold membership requirements to bring the action under Minn.Stat. Ann. § 317A.467:

Jensen argues that this statute does not apply to his cause of action because it is only meant to cover ultra vires actions of the corporation. Minn.Stat. § 317A.467, however, does not refer to ultra vires acts and is found in the section of the act addressing membership. A general comment to the act notes that the threshold number of members required "is intended to be high enough to prevent frivolous actions that drain potentially limited resources of nonprofit corporations, while still allowing a minority of members to act." Minn.Stat. Ann. § 317A.165 gen. cmt. (West 2004).

Jensen insists that because this comment follows Minn.Stat. § 317A.165, the statute that specifically addresses ultra vires acts, only actions involving ultra vires acts fall within the requirement for a threshold number of members. We disagree. The comment recognizes that "this is the threshold number of members required throughout the act in order to initiate certain member actions." Thus, the fact that the comment follows Minn.Stat. § 317A.165 does not limit the threshold member requirement to suits challenging ultra vires acts.

. . . .

Lastly, Jensen argues that this court should avoid the absurd result of not allowing a member terminated in violation of the act to bring a cause of action without support from the threshold number of members. Jensen asks that this court reconcile Minn.Stat. §§ 317A.467 and 317A.411, and grant individual members rights in such situations. Given the general comment, which indicates that the purpose behind the threshold number is to protect nonprofit corporations from frivolous lawsuits, we do not believe that the result reached here is absurd. Additionally, Minn.Stat. § 317A.467 begins with an explanation that it applies when "a corporation or an officer or director of the corporation violates this chapter." We therefore conclude that a member alleging a violation of Minn.Stat. § 317A.411 must meet the requirements of Minn. Stat. § 317A.467, in order to initiate an action against the nonprofit corporation. *Jensen,* at 577–78. Although the district court found the *Jensen* decision persuasive, we do not for the following reasons.

[¶ 9] First, we recognize that the North Dakota Nonprofit Corporations Act "is modeled after the Minnesota Nonprofit Corporation Act which in turn draws heavily on the [Revised Model Nonprofit Corporation Act]." Hearing on S.B. 2210 Before the House Industry, Business and Labor Committee, 55th Legis. Sess. (March 11, 1997) (written testimony of William L. Guy III, Chairman of the North Dakota Nonprofit Corporation Act Revision Committee). The only relevant provision common to the North Dakota, Minnesota and Revised Model acts is the statute setting forth the requirements for terminating membership in a nonprofit corporation and authorizing proceedings to challenge terminations. *See* N.D.C.C. § 10–33–62; Minn.Stat. Ann. § 317A.411; Revised Model Nonprofit Corporation Act § 6.21 (1988). This statute "codifies the judicially developed requirement that expulsions, suspensions and terminations in public benefit and mutual benefit corporations must take place by means of a fair and reasonable procedure." *Id.* Official Comment to Section 6.21. The Revised Model Act does not contain a provision comparable to N.D.C.C. § 10–33–81 and Minn.Stat. Ann. § 317A.467 addressing equitable remedies with threshold membership requirements. However, unlike the North Dakota and Minnesota acts, the Revised Model Act contains an express provision authorizing derivative suits with threshold membership requirements. *See* Revised Model Nonprofit Corporation Act § 6.30 (1988). The Revised Model Act explains "[t]he five percent or fifty-member test and the discretion a court has to award expenses (including counsel fees) if it finds that the suit was commenced without reasonable cause, should prevent strike suits and suits by single or insignificant number of members." *Id.* Official Comment to Section 6.30. All three acts contain a provision addressing ultra vires acts, but they differ. The Minnesota Act contains threshold membership requirements to bring suit based on a nonprofit corporation's allegedly unauthorized acts.

*See* Minn.Stat. Ann. § 317A.165(2). The court in *Jensen,* 688 N.W.2d at 577, relied on the general comment to this statute to note the act was intended to prevent frivolous actions. The provision in the Revised Model Act does not expressly contain threshold membership requirements, but incorporates the statute on derivative suits, which does contain threshold membership requirements. *See* Revised Model Nonprofit Corporation Act § 3.04(b). The North Dakota provision on ultra vires acts does not contain threshold membership requirements. *See* N.D.C.C. § 10–33–23(1).

[¶ 10] The statutory differences are important. The Minnesota court's decision in *Jensen* is distinguishable because the Minnesota statute authorizing derivative actions already contained threshold membership requirements and the equitable remedy statute could be more easily construed to apply to actions challenging termination of membership to give it meaning and to not render it superfluous. Because the North Dakota statute authorizing derivative suits for ultra vires acts contains no threshold membership requirements, the equitable remedy statute serves a purpose by imposing the threshold membership requirement on actions based on ultra vires acts which is missing from the ultra vires statute.

[¶ 11] Second, although we recognize that actions for improper termination of membership would appear to fall within the purview of N.D.C.C. § 10–33–81 because N.D.C.C. § 10–33–62 is in "this chapter" of the Century Code, we must construe statutes in a practical manner and presume the legislature did not intend an absurd or ludicrous result. *See, e.g., Brossart,* 2015 ND 1, ¶ 23, 858 N.W.2d 275. We have addressed the fundamental difference between derivative suits and suits claiming injury to an individual alone:

Individual shareholders generally have no right to bring actions in their individual names and on their own behalf for a wrong committed against the corporation. "To have standing to sue individually, the shareholder must allege an injury separate and distinct from other shareholders, or a wrong involving a contractual right of the shareholder that exists independently of any right of the corporation." This Court has recognized that "[a]s a matter of general corporate law, shareholders alleging injury to the corporation must bring an action on behalf of the corporation within the context of a derivative action."

*Nodak Mut. Ins. Co. v. Ward Cnty. Farm Bureau,* 2004 ND 60, ¶ 15, 676 N.W.2d 752 (internal citations omitted). Other than the decision in *Jensen,* we have found no jurisdictions which have adopted the Revised Model Nonprofit Corporation Act that have imposed threshold membership requirements for derivative actions on an individual's action for improper termination of his membership. *See, e.g., Levitt v. Calvary Temple of Denver,* 33 P.3d 1227, 1229 (Colo.Ct.App.2001); *Baldonado v. Way of Salvation Church,* 118 Hawai'i 165, 185 P.3d 913, 916–17, 919–20 (2008); *Alexander v. Wardlow,* 910 So.2d 1141, 1146–47 (Miss.Ct.App.2005); *Wiederhorn v. Multnomah Athletic Club,* 215 Or.App. 392, 170 P.3d 1, 2–4 (2007); *Original Lawrence Cnty. Farm Org., Inc. v. Tennessee Farm Bureau Fed'n,* 907 S.W.2d 419, 421–22 (Tenn.Ct.App.1995). Given the differences between derivative actions and actions challenging the denial of individual rights, we believe it would be absurd to require Marhula to join as plaintiffs "fifty members with voting rights or ten percent of the members with voting rights, whichever is less," N.D.C.C. § 10–33–81, to maintain an action challenging the termination of his membership in violation of N.D.C.C. § 10–33–62. The interpretation

advanced by the Club and adopted by the district court would strip N.D.C.C. § 10–33–62 of its utility.

[¶ 12] We conclude the threshold membership requirements under N.D.C.C. § 10–33–81 do not apply to a member's individual action against a nonprofit corporation claiming he was improperly terminated from membership in violation of N.D.C.C. § 10–33–62, and therefore, the district court erred in dismissing Marhula's action.

### III

[¶ 13] Our disposition of this case makes it unnecessary to address Marhula's alternative argument that he has a common law claim of a due process violation. We reverse the judgment and remand for findings on the merits of Marhula's claim against the Club. The district court may conduct any further proceedings it may deem necessary.

[¶ 14] CAROL RONNING KAPSNER, LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.