McEvers, Justice.
[¶ 1] Amira Gunn appeals from an order deferring imposition of sentence after a jury found her guilty of attempted gross sexual imposition, a class A felony. Gunn argues the evidence against her was insufficient, she was convicted of speech protected by the First Amendment, and the jury instructions were improper. We affirm.
I
[¶ 2] In November 2015, Gunn and Calvin Till communicated in private conversations on MeetMe.com, a social networking website. Gunn and Till exchanged more than 700 messages between November 11 and 13, 2015. In a portion of the conversations, Gunn gave explicit and lewd instructions to Till on how to groom and sexually assault his young daughter and how to abduct and sexually assault Till's two neighbor children.
[¶ 3] On December 16, 2015, Bismarck Police Department Detective Brandon Rask and Homeland Security Special Agent Randy Helderop interviewed Gunn. During the interview, Gunn admitted to having the conversations with Till. Gunn acknowledged she knew of Till's sexual fetish for children including his own daughter. Gunn stated she believed Till's daughter was approximately six years old.
*704 Gunn characterized the conversations with Till as role-playing.
[¶ 4] At trial, Detective Rask testified he believed the initial conversations between Gunn and Till involved role-playing. Rask testified he believed the role-playing eventually ceased and Gunn and Till reassumed their own identities. Rask testified that later in the conversations Till relayed to Gunn that he was sexually assaulting his daughter in real-time. The jury found Gunn guilty of attempted gross sexual imposition. The district court deferred imposition of sentence for a period of five years.
II
[¶ 5] Gunn argues there is no evidence of a victim in this case. Gunn also claims that since Till did not commit the crime of gross sexual imposition, there is no evidence that Gunn aided Till to commit the crime.
[¶ 6] Gunn raised these arguments at trial through a motion for acquittal under N.D.R.Crim.P. 29, which the district court denied. Before granting a motion for acquittal, the court must find the evidence is insufficient to sustain a conviction. State v. Montplaisir , 2015 ND 237, ¶ 35, 869 N.W.2d 435. Our standard of review for claims of insufficient evidence is well established:
[W]e look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses.
Id. (quoting State v. O'Toole , 2009 ND 174, ¶ 8, 773 N.W.2d 201 ).
[¶ 7] The State alleged in its sixth amended information that Gunn committed the crime of attempted gross sexual imposition, a class A felony. The State charged Gunn with criminal attempt under N.D.C.C. § 12.1-06-01(2) :
A person who engages in conduct intending to aid another to commit a crime is guilty of criminal attempt if the conduct would establish his complicity under section 12.1-03-01 were the crime committed by the other person, even if the other is not guilty of committing or attempting the crime , for example, because he has a defense of justification or entrapment.
(Emphasis added.) Contrary to Gunn's argument, the plain language of the statute does not require the crime actually be committed by the other person. The State was not required to prove Till committed gross sexual imposition.
[¶ 8] The attempt statute also references the accomplice statute, N.D.C.C. § 12.1-03-01 :
1. A person may be convicted of an offense based upon the conduct of another person when:
a. Acting with the kind of culpability required for the offense, he causes the other to engage in such conduct;
b. With intent that an offense be committed, he commands, induces, procures, or aids the other to commit it, or, having a statutory duty to prevent its commission, he fails to make proper effort to do so; or
c. He is a coconspirator and his association with the offense meets the requirements of either of the other subdivisions of this subsection.
*705 [¶ 9] The district court's instructions to the jury defined "accomplice" as "a person who with intent that an offense be committed, commands, induces, procures or aids another to commit a crime." This definition mirrors the language in N.D.C.C. § 12.1-03-01(1)(b). Thus, for the jury to find Gunn guilty of attempted gross sexual imposition, the State must prove Gunn's conduct commanded or aided Till to commit gross sexual imposition, had the crime been committed by Till. An accomplice may command or aid another to commit a crime by electronic means. See Saari v. State , 2017 ND 94, ¶¶ 2, 9, 893 N.W.2d 764 (defendant instructed his girlfriend over the phone on how to forge a check); see also State v. Soltis , 2009 WL 2596096, *5 (Minn. Ct. App. 2009) (defendant instructed individual over the phone to take sexually explicit photos of minor child).
[¶ 10] Gunn argues that because Till's daughter was not present during the online conversations and that the neighbor children could have been imaginary, there was no evidence of a victim. Gunn also claims the conversations with Till were role-playing.
[¶ 11] The MeetMe messages between Gunn and Till were admitted into evidence and included numerous instances of Gunn instructing Till how to groom and sexually assault his daughter and neighbor children, a six-year-old girl and eight-year-old boy. Gunn stated in the interview with Detective Rask and Special Agent Helderop that she believed Till's daughter was approximately six years old.
[¶ 12] Rask testified about the online conversations between Gunn and Till. He testified the initial conversations involved role-playing, with Gunn acting as Till's nine or ten-year-old daughter. Rask testified he believed the role-playing eventually ceased and Gunn and Till reassumed their own identities. Rask testified that Till informed Gunn he had a daughter who would be visiting later in the day. Gunn then began instructing Till on how to groom and sexually assault his daughter. Rask testified that further along in the conversations Till began relaying to Gunn that he was sexually assaulting his daughter in real-time.
[¶ 13] The attempt statute under which Gunn was charged, N.D.C.C. § 12.1-06-01(2), did not require Till to commit the crime of gross sexual imposition. Rather, the statute provides that if the crime were committed, would Gunn's conduct have made her an accomplice to the crime under N.D.C.C. § 12.1-03-01(1)(b). Detective Rask testified that part of Gunn and Till's conversation was role-playing; however, the part of the conversation in which Gunn instructed Till to sexually assault his daughter appeared not to be role-playing. The context of those messages indicated that Till was sexually assaulting his daughter in real-time under Gunn's instructions. The State presented sufficient evidence of who the victim would be were the crime committed by Till. When viewing the evidence in the light most favorable to the State, we conclude there is substantial evidence to warrant the conviction against Gunn.
III
[¶ 14] Gunn argues the conversations between her and Till are protected by the First Amendment.
[¶ 15] "Whether speech is constitutionally protected is a question of law, which is fully reviewable on appeal." State v. Brossart , 2015 ND 1, ¶ 10, 858 N.W.2d 275. We use caution when reviewing claims of constitutionally protected activity, and we independently examine the record when free speech arguments are made to *706 decide whether the charged conduct is protected. Id. Evidence of constitutionally protected activity is not admissible to a jury. State v. Barth , 2005 ND 134, ¶ 10, 702 N.W.2d 1. A defendant should generally bring claims of constitutionally protected activity in a motion in limine. Id.
[¶ 16] "The First Amendment permits 'restrictions upon the content of speech in a few limited areas, which are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.' " Brossart , 2015 ND 1, ¶ 11, 858 N.W.2d 275 (quoting Virginia v. Black , 538 U.S. 343, 358-59, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) ). "The freedom of speech has its limits; it does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children." Ashcroft v. Free Speech Coalition , 535 U.S. 234, 245-46, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). Sexual expression that is indecent but not obscene is protected by the First Amendment. Id. at 245, 122 S.Ct. 1389. The United States Supreme Court has established a test for obscenity:
(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.
Reno v. Am. Civil Liberties Union , 521 U.S. 844, 872, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (quoting Miller v. California , 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) ).
[¶ 17] In addition, the First Amendment does not protect speech integral to a crime. See State v. Backlund , 2003 ND 184, ¶ 29, 672 N.W.2d 431 ("freedom of speech does not extend to speech used as an integral part of conduct in violation of a valid criminal statute"); Brandenburg v. Ohio , 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (allowing a state to prohibit "advocacy [ ] directed to inciting or producing imminent lawless action and [ ] likely to incite or produce such action").
[¶ 18] Before trial, Gunn moved the district court to exclude the conversations, arguing they were protected by the First Amendment. The court denied her motion. At trial, Gunn moved for an acquittal based on the conversations being protected by the First Amendment. Again, the court denied the motion. The court addressed the obscenity test under Reno v. ACLU , and analyzed whether the conversations were protected under the First Amendment:
In the present case, the Court finds Gunn's statements constitute obscene speech that is not protected by the First Amendment. Under the obscenity test stated in Roth [v. U.S. , 354 U.S. 476, 485, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) ], the lewd statements pertaining to sexual grooming of Till's daughter, as well as a plan for sexual abuse of the neighbor children, clearly meet the elements of obscene speech.
First, the average person would find the statements to appeal to the prurient interests of Gunn. It is apparent the statements are of a nature having a tendency to excite lustful thoughts in Gunn.
Second, the statements depict and describe sexual conduct in a patently offensive way as prescribed by state law. An example of "patently offensive" includes *707 a "representation or description of masturbation ... and lewd exhibition of the genitals." See Miller v. California , 413 U.S. 15, 25, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Here, Gunn's statements meet the second prong as they describe and encourage Till to masturbate and expose his genitals to his daughter.
Third, the statements severely lack any serious literary, artistic, political, or scientific value. Gunn has not indicated they qualify as such and the Court fails to see, by any stretch of the imagination, how the statements have literary, artistic, political, or scientific value. Therefore, Gunn's statements to Till regarding sexual abuse of minor children qualify as obscenity and are not protected speech under the First Amendment.
[¶ 19] While we agree with the district court that Gunn's statements were obscene, the primary reason Gunn's statements fall outside the protection of the First Amendment is because they were integral to the commission of a crime. Gunn's private one-on-one messages to Till provided detailed instructions on committing sex crimes against children. Gunn's statements were integral to the crime of criminal attempt because under the circumstances known to her, the statements advocated and were likely to produce imminent lawless action. Gunn's statements were criminal and outside the First Amendment because they showed an "inten[t] to aid another to commit a crime." N.D.C.C. § 12.1-06-01(2). We conclude the online conversations between Gunn and Till are not protected by the First Amendment.
IV
[¶ 20] Gunn argues the district court's jury instructions failed to correctly instruct the jury on the culpability required for criminal attempt.
[¶ 21] Jury instructions are fully reviewable on appeal. State v. Wilson , 2004 ND 51, ¶ 11, 676 N.W.2d 98. We review the instructions as a whole to decide whether they adequately and correctly inform the jury of the applicable law. State v. Anderson , 2016 ND 28, ¶ 31, 875 N.W.2d 496. "If, when considered as a whole, a jury instruction correctly advises the jury of the law, it is sufficient even if part of it standing alone may be insufficient." Id. (quoting State v. Barth , 2001 ND 201, ¶ 12, 637 N.W.2d 369 ).
[¶ 22] The district court instructed the jury on the essential elements of attempted gross sexual imposition:
1) On or about November 12-13, 2015, in Burleigh County, North Dakota;
2) the defendant, Amira Gunn;
3) intending to aid Calvin Till to commit the crime of Gross Sexual Imposition;
4) engaged in conduct that would make the defendant, Amira Gunn an accomplice to Gross Sexual Imposition were the crime committed by Calvin Till; and
5) the victim of the sexual act was less than fifteen (15) years of age and Calvin Till was at least twenty-two (22) years of age.
[¶ 23] Gunn argues the word "knowingly" should have preceded essential element (4). Gunn contends essential element (4) should have read "knowingly engaged in conduct that would make the defendant, Amira Gunn an accomplice to Gross Sexual Imposition were the crime committed by Calvin Till."
[¶ 24] Here, essential element (3) uses "intending," indicating a culpability of intentionally. A person engages in conduct " '[i]ntentionally' if, when he engages in the conduct, it is his purpose to do so." N.D.C.C. § 12.1-02-02(1)(a). A person engages in conduct " '[k]nowingly' if, when he *708 engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so." N.D.C.C. § 12.1-02-02(1)(b). The district court provided these definitions to the jury in the instructions. The highest level of culpability is intentionally. State v. Rufus , 2015 ND 212, ¶ 22, 868 N.W.2d 534.
[¶ 25] The jury instructions followed the wording of the criminal attempt statute under which Gunn was charged. See N.D.C.C. § 12.1-06-01(2) ("[a] person who engages in conduct intending to aid another to commit a crime is guilty of criminal attempt if the conduct would establish his complicity under section 12.1-03-01 were the crime committed by the other person"). The instructions also defined "accomplice," which mirrored the text of N.D.C.C. § 12.1-03-01(1)(b). We conclude the district court correctly instructed the jury on the culpability required for criminal attempt and correctly advised the jury of the law. The court's instructions to the jury were not erroneous.
V
[¶ 26] We have considered Gunn's remaining arguments and find them to be without merit, unnecessary to our decision, or not adequately articulated, supported and briefed. The order is affirmed.
[¶ 27] Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte
Gerald W. VandeWalle, C.J.
Jon J. Jensen